# OMAHA & COUNCIL BLUFFS STREET RAILWAY COMPANY *v.* INTERSTATE COMMERCE COMMISSION.

## APPEAL FROM THE UNITED STATES COMMERCE COURT.

No. 458.    Argued February 19, 20, 1912.—Decided June 9, 1913.

The meaning of the Act to Regulate Commerce and whether it applies to street railways carrying passengers over a state line cannot be determined from statements made in Congress during the debates on the bill; the act must be interpreted by its own terms as looked at in the whole.

In terms the Act applies to all carriers engaged in the transportation of passengers or property by railroad, and the scope of the act depends on the definition of the word "railroad" as used in 1887 when the act was originally passed.

Street railways for passengers only, as they existed in 1887, were not within the contemplation of Congress in passing the Act to Regulate Commerce, such railroads are not subject to its provisions or under the jurisdiction of the Interstate Commerce · Commission even though they carry passengers across the state line.

*Quære* to what extent since the passage of the act of June 18, 1910, interstate railways doing passenger, freight and express business are now under the jurisdiction of the Interstate Commerce Commission, and if so, to what extent.

191 Fed. Rep. 40, reversed, and 179 Fed. Rep. 243, affirmed.

THE facts, which involve the jurisdiction of the Interstate Commerce Commission over certain classes of street railway systems, are stated in the opinion.

*Mr. John Lee Webster*, with whom *Mr. Frederic D. Mc-Kenney* was on the brief, for appellants:

The original and amendatory statute regulating commerce at the time said order was made, did not include street railway companies. The term "railroad" in said act applies only to commercial railroads as distinct from street railway companies.

See express statement to that effect by Senator Cullom, chairman of the committee having the bill in hand. Cong. Rec., Vol. 17, Pt. IV, p. 3472; *Wilson* v. *Rock Creek Railway Co.*, 7 I. C. C. Rep. 83.

The word "railroad" as used in the constitutions and statutes of the various States does not include street railway companies, and street railway corporations are not governed by laws relating to railroads. This distinction between the two kinds of railroads was well known at the time of the passage of the act to regulate commerce.

In the following cases the word "railroad" as used in the constitutions and statutes of the several States does not include a street railway. Street railways are not included in fellow servant acts, in railway commission acts, in judgment lien acts, and other laws enacted to govern and control railroads, unless specifically mentioned therein. *Street Ry. Co.* v. *Cedar Rapids*, 106 Iowa, 467; *Funk* v. *St. Paul Ry. Co.*, 61 Minnesota, 435; *Lincoln Traction Co.* v. *Webb*, 73 Nebraska, 136; *Daily* v. *Milwaukee & E. R. L. Co.*, 119 Wisconsin, 398; *Lincoln Street R. R. Co.* v. *McClellan*, 54 Nebraska, 672; *Omaha Street R. Co.* v. *Boesen*, 74 Nebraska, 765; *Railroad Co.* v. *Railroad Commissioner*, 73 Kansas, 168; *State* v. *Cain*, 69 Kansas, 186; *Manhattan Trust Co.* v. *Sioux City Cable Ry. Co.*, 68 Fed. Rep. 82; *Bridge Co.* v. *Iron Co.*, 59 Ohio St. 179; *Front Street Cable Ry. Co.* v. *Johnson*, 2 Washington, 112; *Louisville &c. Ry. Co.* v. *Louisville City Ry. Co.*, 2 Duvall (Kentucky); 175; *In re New York District Ry. Co.*, 107 N. Y. 42; *Railroad Commissioners* v. *Market Street R. R. Co.*, 132 California, 677; *Thompson-Houston Co.* v. *Simon*, 20 Oregon, 60; *Sams* v. *St. Louis Ry. Co.*, 174 Missouri, 53; *State* v. *Duluth Gas Co.*, 76 Minnesota, 96; *Gyger* v. *West Phila. Ry. Co.*, 136 Pa. St. 16; *Riley* v. *Galveston City R. R. Co.*, 35 S. W. Rep. 826; *State* v. *Lincoln Traction Co.*, Nebraska, Jan. 3, 1912; *Sears* v. *Railway Co.*, 65 Iowa, 742; *Freiday* v. *Sioux*

*City Transit Co.*, 92 Iowa, 191; *Massachusetts Trust Co.* v.
*Hamilton*, Rep. 588.

Under the constitution and laws of Nebraska, appellant
is a street railway and is not a street railroad.

There is a well defined and marked distinction between
railroad corporations and street railway corporations un-
der the constitution and laws of the State of Nebraska.
*Lincoln Street Railway* v. *McClellan*, 54 Nebraska, 672;
*Omaha Street Ry. Co.* v. *Boesen*, 74 Nebraska, 764; *Lincoln
Traction Co.* v. *Webb*, 73 Nebraska, 136; *Tyrrell* v. *Lincoln
Traction Co.*, January 3, 1912.

Appellant is incorporated as a street railway company
under the laws of the State of Iowa which also recognize
the well defined distinction between street railways and
railroads. *Sears* v. *Railway Co.*, 65 Iowa, 742; *Freiday* v.
*The Sioux City Transit Co.*, 92 Iowa, 191; *City R. R. Co.* v.
*Cedar Rapids*, 106 Iowa, 476.

The dual functions of a commercial railroad and a
street railway cannot be combined in the same corpora-
tion. *Gillette* v. *Aurora Ry. Co.*, 228 Illinois, 261; *Chicago
& Southern Traction Co.* v. *Flaherty*, 222 Illinois, 67;
*Bradley Mfg. Co.* v. *Traction Co.*, 229 Illinois, 170, 176.

The Act to Regulate Commerce has been under discus-
sion, and various amendments have been made thereto
since its first enactment in 1887. If Congress intended
to extend said act to include street railways why has not
such amendment been made when other amendments
were being made to the act?

In deciding whether the Act to Regulate Commerce
applies to street railways it is proper to consider the
inconveniences that would result to the public by com-
pelling interchange of freight and cars and passengers
between commercial railroads and street railway com-
panies, as well as the fact stated *supra* that there exists
no necessity, nor public demand for the regulation of
street railway companies by the Interstate Commerce

Commission. *Michigan Ry. Co.* v. *Hammond Electric Ry. Co.*, 83 N. E. Rep. 650; *Massillon Bridge Co.* v. *Cambria Iron Co.*, 59 Ohio St. 179.

The order of the Commission is void because it was beyond the scope of the complaint, and for the further reason that the effect of the order is to require appellant to receive and carry in its cars to all points within the city of Omaha, and without compensation, persons who have paid a fare of ten cents to ride on the bridge line from Council Bluffs, Iowa, to the eastern boundary of the city of Omaha, and is therefore a direct interference with what is intrastate business.

*Mr. Charles W. Needham* for the Interstate Commerce Commission:

The power of Congress to regulate commerce is not confined to any particular agency or instrumentality. *Gibbon* v. *Ogden*, 9 Wheat. 1, 196; *McCulloch* v. *Maryland*, 4 Wheat. 316; *Employers' Liability Case*, 207 U. S. 493; *Hopkins* v. *United States*, 171 U. S. 597.

It embraces all the instruments by which such commerce may be conducted. *Welton* v. *Missouri*, 91 U. S. 275; citing *Mobile County* v. *Kimball*, 102 U. S. 691; *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 196; *Hooper* v. *California*, 155 U. S. 648, 653; *United States* v. *E. C. Knight Co.*, 156 U. S. 1.

Commerce as used in the commerce clause of Constitution has reference to transportation, that is, the movement of either property or persons. *Chicago R. R. Co.* v. *Fuller*, 17 Wall. 560.

Congress exercises its regulating power by direct and appropriate legislation and in this case through the Interstate Commerce Commission acting under the powers granted by the Act to Regulate Commerce. See the Act to Regulate Commerce, as amended, and the acts supplementary thereto, see also *Texas R. Co.* v.

*Int. Comm. Comm.*, 162 U. S. 197; *Cincinnati R. Co.* v. *Int. Comm. Comm.*, 162 U. S. 184; *Balt. & Ohio R. R. Co.* v. *United States*, 215 U. S. 481; *Int. Comm. Comm.* v. *Chi., R. I. & Pac. Ry.*, 218 U. S. 88; *Southern Pacific Co.* v. *Int. Comm. Comm.*, 219 U. S. 433; *Southern Pacific Terminal Co.* v. *Int. Comm. Comm.*, 219 U. S. 498; *Int. Comm. Comm.* v. *Del., Lack. & West. R. R.*, 220 U. S. 235.

The Act to Regulate Commerce as amended defines the carriers subject to the act.

Congress and the Interstate Commerce Commission have jurisdiction over a common carrier operating cars by electricity, and the fact that it is an electric street railway does not exempt it from such regulating power. As to legislative construction see *Willson* v. *Rock Creek R. Co.*, 7 I. C. C. 83, 88.

See also *Chi. & Mil. Electric R. R.* v. *Ill. Cent. R. R. Co.*, 13 I. C. C. 20; *Beall* v. *Washington & Mt. Vernon Ry.*, 20 I. C. C. 406; *Cincinnati Traction Co.* v. *B. & O. S. W. R. R. Co.*, 20 I. C. C. 486.

If the Act to Regulate Commerce did not include "street electric passenger railways" there was no reason for excepting this class of railways from the additional power conferred upon the Commission to establish through routes and joint rates. As to judicial construction, see *Grinsfelder* v. *Spokane Street R. Co.*, 53 Pac. Rep. 719; *Densmore* v. *Racine M. R. Co.*, 12 Wisconsin, 649; *McCleary* v. *Babcock*, 82 N. E. Rep. 453, 456; *Riggs* v. *San Francois County Ry. Co.*, 96 S. W. Rep. 707, 708; *Heastonville R. R. Co.* v. *Philadelphia*, 89 Pa. St. 210; *Gyger* v. *Philadelphia City Passenger R. Co.*, 136 Pa. St. 96; *Cheaton* v. *McCormick*, 178 Pa. St. 186; *Old Colony Trust Co.* v. *Rapid Transit Co.*, 192 Pa. St. 596; *Penna. R. R. Co.* v. *Pittsburg*, 104 Pa. St. 552; *Rafferty* v. *Central Traction*, 147 Pa. St. 579; *Reeves* v. *Philadelphia Tr. Co.*, 152 Pa. St. 153; *Old Colony Trust Co.* v. *Allentown*, 192 Pa. St. 596; *Employers' Liability Cases*, 207 U. S. 463, 497.

The comprehensive language of the statute includes trolley lines and every common carrier engaged in interstate traffic by railroad.

Appellants are not ordinary street car companies; they are bridge and railway companies. The bridge company was not organized as a "street" railway company, but as a "railway and bridge company," and its lessee, as operating company, is exercising these functions.

Traffic over a bridge spanning navigable waters separating two States is interstate commerce. *Covington & Cincinnati Bridge Co.* v. *Kentucky,* 154 U. S. 204.

The railroad is an interurban road connecting two cities located respectively in two States, and such transportation and facilities constitute interstate commerce. *Gibbon* v. *Ogden, supra; Gloucester Ferry Co.* v. *Pennsylvania,* 114 U. S. 196; *Munn* v. *Illinois,* 94 U. S. 113; *C., B. & Q. R. Co.* v. *Iowa,* 94 U. S. 155; *Wabash, St. L. & P. R. Co.* v. *Illinois,* 118 U. S. 557.

Where several instrumentalities of commerce have been merged in one ownership by purchase or lease and are operated by one company, such instrumentalities, in so far as they are used for interstate commerce, are voluntarily brought under the jurisdiction of Congress and the Interstate Commerce Commission. The fact that one or more of such instrumentalities are used in a greater degree for intrastate business than for interstate business does not lessen the regulating power of the Interstate Commerce Commission over the interstate traffic, and the Commission may establish a through route and a joint through rate for interstate traffic over all of said instrumentalities. *C., N. O. & T. P. Ry. Co.* v. *Int. Comm. Comm., supra.*

The fact that these corporations are organized under state laws, general or special, as commercial or as street railways does not change the character of the commerce nor exempt the companies actually doing the interstate

business from Federal regulation as to the interstate traffic.

The fact that this company does not carry freight, but confines its business to the carrying of passengers, does not exempt it from Federal control.

*Mr. Assistant Attorney General Denison,* with whom *Mr. Thurlow M. Gordon,* Special Assistant to the Attorney General, was on the brief, for the United States:

The Act to Regulate Commerce covers, among other things, "any common carrier or carriers engaged in the transportation of passengers or property wholly by railroad." Even assuming for the purpose of argument that this generic language does not include merely municipal trolley railroads, it still includes the species of railroad known as "interurban" railroads.

The Interstate Commerce Commission reported as a fact, and upon facts sufficient to justify their conclusion, that the appellants were an "interurban" railroad, as distinguished from a local street railroad.

It is of no importance that this species of railroad did not exist at the time the act was originally passed, because it falls within the generic term, and also within the policy. *Weems* v. *United States,* 217 U. S. 349, p. 373; *De Lima* v. *Bidwell,* 182 U. S. 1, p. 197; *Bishop* v. *North,* 11 Mees. & W. 418.

Nothing in the language or context excludes this species of railroad from the general language. The word "railroad" does not exclude it, and indeed "interurban railroads" are considered to be "railroads" as distinguished from "street railways" by the laws not only of Iowa, Code, § 2033 a and b; *Cedar Rapids &c. M. C. Ry. Co.* v. *Cummins,* 125 Iowa, 430, and of Nebraska (Cobbey's Ann. Stat. of Nebraska, 1909, § 10517); but by numerous other authorities. *City of Philadelphia* v. *Philadelphia Traction Co.,* 55 Atl. Rep. 762 (Penn.); *Cincinnati &c. Electric R. R.*

Co. v. *Lohe*, 68 Oh. St. 101; *Malott* v. *C. & E. St. L. Electric R. Co.*, 108 Fed. Rep. 313; *Riggs* v. *St. Francois Co. Ry. Co.*, 120 Mo. Supp. 335; *Montgomery St. Ry. Co.* v. *Lewis*, 148 Alabama, 134; *Katzenberger* v. *Lawo*, 90 Tennessee, 238; *Hestonville &c. R. R.* v. *Philadelphia*, 89 Pa. St. 210; *In re Washington Street Ry. Co.*, 115 N. Y. 442; *Central National Bank* v. *Worcester H. R. Co.*, 13 Allen, 105; *Egan* v. *Cheshire St. Ry. Co.*, 78 Connecticut, 291; *Savannah &c. R. Co.* v. *Williams*, 117 Georgia, 414; *Rafferty* v. *Central Traction Co.*, 147 Pa. St. 579; *Bloxham* v. *Consumers' &c. Co.*, 36 Florida, 519; *City of Chicago* v. *Evans*, 24 Illinois, 52, 55; *Citizens' R. Co.* v. *Pittsburg*, 104 Pa. St. 522; *Clinton* v. *Iowa*, 37 Iowa, 61; *Lieberman* v. *R. R.*, 141 Illinois, 140; Baldwin, Am. Railroad Law, 9; *Birmingham R. Co.* v. *Jacobs*, 92 Alabama, 187; *Diebold* v. *Ky. Traction Co.*, 24 Ky. L. R. 1275; Elliott on Railroads (2d ed., Ch. XLIV).

The essential thing, however, is not the classification of the operating company under the corporation laws of the State, but the nature of the operation within the intent of the Interstate Commerce Act. *Liverpool Ins. Co.* v. *Massachusetts*, 10 Wall. 566.

The mere use of electric power rather than steam does not take a railroad out of the sphere of the Interstate Commerce Law. *Malott* v. *C. & E. St. & Electric Ry. Co.*, 108 Fed. Rep. 313; *Diebold* v. *Ky. Traction Co.*, 25 Ky. L. Rep. 1275 (77 S. W. Rep. 674); *Riggs* v. *St. Francois Co. Ry.*, 120 Mo. App. 335; *Stillwater & St. R. Co.* v. *Boston &c. R. Co.*, 171 N. Y. 589.

Nor does the fact that it carries no freight. Sections 1, 6, 15, 20 and 22 of the Statute.

The Interstate Commerce Commission has constantly assumed jurisdiction over this class of railroads. *Willson* v. *Rock Creek Ry.*, 7 I. C. C. 83 (decided in 1897); *C. & M. Electric R. R. Co.* v. *I. C. R. R. Co.*, 13 I. C. C. 20; *Beall* v. *W. A. & Mt. V. Ry.*, 20 I. C. C. 406; *C. & C. Traction Co.* v. *B. & O. S. W. R. R. Co.*, 20 I. C. C. 486.

This assumption of jurisdiction has generally been acquiesced in, there being now in the public records of the Commission between 3,000 and 4,000 electric-railway tariffs.

This assumption of jurisdiction was confirmed by Congress by the amendment in 1910 of § 15, withdrawing from the Commission the power to establish a through route between "street electric passenger railways not engaged in transporting freight in addition to their passenger and express business and railroads of a different character."

Even if prior to this amendment the Commission did not have the power, it was granted by the amendment and thereby the order was ratified. *Hamilton* v. *Dillon*, 21 Wall. 73, 88, 95; *Mattingly* v. *Dist. of Col.*, 97 U. S. 687, 690; *Nat. Bank* v. *Shoemaker*, 97 U. S. 692; *United States* v. *Heinszen*, 206 U. S. 370.

At least the amendment validated the order from the time it went into effect, which was June 10, 1910. *B. & O. R. R. Co.* v. *I. C. C.*, 221 U. S. 612.

MR. JUSTICE LAMAR delivered the opinion of the court.

The Omaha & Council Bluffs Railway & Bridge Company was chartered as a Street Railroad Company under the laws of Iowa. It owned street car lines in Council Bluffs and, in 1887, was authorized by Congress to construct a bridge across the Missouri River and to operate thereon "steam, cable and street cars." (March 3, 1887, 24 Stat. 501, c. 356.) The Omaha & Council Bluffs Railway, chartered as a Street Railroad under the laws of Nebraska, owned the street car lines in Omaha and its suburbs, South Omaha, Benson, Dundee and Florence. This street railroad had no right of eminent domain and was not authorized to haul freight, being limited by its charter to carrying passengers only. By lease it acquired

the bridge and car lines in Council Bluffs which thereafter it operated as part of its system.   Complaint having been made that certain interstate fares were unreasonable, a hearing was had before the Commerce Commission, which, on November 27, 1909 (17 I. C. C. 239),ordered a reduction in the rate between Council Bluffs, Iowa, and points beyond the Loop, in Omaha, Nebraska.   The two companies, lessor and lessee, thereupon filed a bill in the United States Circuit Court for the District of Nebraska to enjoin the order.   The case was heard before three Circuit Judges, who (179 Fed. Rep. 243) granted a temporary injunction.

The case was transferred to the Commerce Court, which, on October 5, 1911, dismissed the bill, 191 Fed. Rep. 40.

On the argument of the appeal in this court, the sole question discussed was whether the provisions of the Commerce Act as to railroads applied to street railroads, the appellant relying, among other things, on the fact that during the discussion in the Senate the author of the bill and Chairman of the Senate Committee to which it had been referred, said (17 Cong. Rec. Pt. IV, p. 3472) "that the Bill is not intended to affect the stage coach, the *street railway,* the telegraph lines, the canal boat, or the vessel employed in the inland or coasting trade, even though they may be engaged in interstate commerce, because it is not deemed necessary or practicable to cover such a multitude of subjects."   After quoting § 1 [1] and this statement and construing it in the light of the broad scope of the act, the Commerce Court held that the meaning of the statute could not be determined from statements used in debate.   We concur in that view.   The act must

[1] SEC. 1. That the provisions of this act shall apply to any corporation or any person or persons engaged in the transportation of oil or other commodity, except water and except natural or artificial gas, by

be interpreted by its own terms, and we must look to it as a whole, in order to determine whether it applies to Street Railroads, carrying passengers between cities divided by a state line.

The statute in terms applies to carriers engaged in the transportation of passengers or property by railroad.

But, in 1887, that word had no fixed and accurate meaning, for there was then, as now, a conflict in the

means of pipe lines, or partly by pipe lines and partly by railroad, or partly by pipe lines and partly by water, who shall be considered and held to be common carriers within the meaning and purpose of this act, and to any common carrier or carriers engaged in the transportation of passengers or property wholly by railroad (or partly by railroad and partly by water when both are used under a common control, management, or arrangement for a continuous carriage or shipment) from one State or Territory of the United States or the District of Columbia to any other State or Territory or from one place in a Territory to another place in the same Territory, or from any place in the United States to an adjacent foreign country, or from any place in the United States through a foreign country to any other place in the United States, and also to the transportation in like manner of property shipped from any place in the United States to a foreign country and carried from such place to a port of transshipment or shipped from a foreign country to any place in the United States and carried to such place from a port of entry either in the United States or an adjacent foreign country. Provided, however, That the provisions of this act shall not apply to the transportation of passengers or property, or to the receiving, delivering, storage, or handling of the property wholly within one State and not shipped to or from a foreign country from or to any State or Territory as aforesaid.

The term "common carrier," as used in this act, shall include express companies and sleeping car companies. The term "railroad," as used in this act, shall include all bridges and ferries used or operated in connection with any railroad, and also all the road in use by any corporation operating a railroad, whether owned or operated under a contract, agreement, or lease, and shall also include all switches, spurs, tracks, and terminal facilities of every kind used or necessary in the transportation of the persons or property designated herein, and also all freight depots, yards, and grounds used or necessary in the transportation or delivery of any of said property. (24 Stat. 379.)

decisions of the state courts as to whether street railroads were embraced within the provisions of a statute giving rights or. imposing burdens on railroads. The appellants cite decisions from twelve States holding that in a statute the word "railroad" does not mean "street railroad." The defense cite decisions to the contrary from an equal number of States. The present record discloses a similar disagreement in Federal tribunals. For not only did the Commerce Court and the Circuit Court differ, but it appears that the. members of the Commission were divided on the subject when this case was decided and also when the question was first raised in *Willson* v. *Rock Creek Ry. Co.*, 7 I. C. C. 83.

This conflict is not so great as at first blush would appear. For all recognize that while there is similarity between railroads and street railroads, there is also a difference. Some courts, emphasizing the similarity, hold that in statutes the word "Railroad" includes Street Railroad, unless the contrary is required by the context. Others, emphasizing the dissimilarity, hold that "Railroad" does not include Street Railroad unless required by the context, since, as tersely put by the Court of Appeals of Kentucky, "a street railroad, in a technical and popular sense, is as different from an ordinary railroad as a street is from a road." *Louisville & Portland R. R. Co.* v. *Louisville City Ry. Co.*, 2 Duvall, 175.

But all the decisions hold that the meaning of the word is to be determined by construing the statute as a whole. If the scope of the act is such as to show that both classes of companies were within the legislative contemplation, then the word "Railroad" will include Street Railroad. On the other hand, if the act was aimed at Railroads proper, then Street Railroads are excluded from the provisions of the statute. Applying this universally accepted rule of construing this word, it is to be noted that ordinary

railroads are constructed on the companies' own property. The tracks extend from town to town and are usually connected with other railroads, which themselves are further connected with others, so that freight may be shipped, without breaking bulk, across the continent. Such railroads are channels of interstate commerce. Street Railroads, on the other hand, are local, are laid in streets as aids to street traffic, and for the use of a single community, even though that community be divided by state lines, or under different municipal control. When these street railroads carry passengers across a state line they are, of course, engaged in interstate commerce, but not the commerce which Congress had in mind when legislating in 1887. Street railroads transport passengers from street to street, from ward to ward, from city to suburbs, but the commerce to which Congress referred was that carried on by railroads engaged in hauling passengers or freight "between States," "between States and Territories," "between the United States and foreign countries." The act referred to Railroads which were required to post their schedules—not at street corners where passengers board street cars, but in *"every depot, station or office where passengers or freight are received for transportation."* The railroads referred to in the act were not those having separate, distinct and local street lines, but those of whom it was required that they should make joint rates and reasonable facilities for interchange of traffic with connecting lines, so that freight might be easily and expeditiously moved in interstate commerce.

Every provision of the statute is applicable to railroads. Only a few of its requirements are applicable to street railroads which did not do the business Congress had in contemplation and had not engaged in the pooling, rebating and discrimination which the statute was intended to prohibit. This was recognized in *Willson* v. *Rock*

*Creek Ry. Co.*, 7 I. C. C. 83, where, although it was held that the statute applied to a street railroad between Washington, D. C., and a point in Maryland, the Commission nevertheless said (7 I. C. C. 88): "It may be conceded that this class of railroads was not specifically within the contemplation of the framers of that law, for the evils which it was intended to remedy would, in the nature of the case, but rarely arise in the management of such roads in their dealing with the public."

Street railroads not being guilty of the mischief sought to be corrected, the remedial provisions of the statute not being applicable to them, commands upon every railroad "subject to the act" being such that they could not be obeyed by street railroads because of the nature of their business and character and location of their tracks, it is evident that the case is within that large line of authorities which hold that under such a statute the word "railroad" cannot be construed to include street railroad.

But it is said that since 1887, when the act was passed, a new type of interurban railroad has been developed which, with electricity as a motive power, uses larger cars and runs through the country from town to town, enabling the carrier to haul passengers, freight, express and the mail for long distances at high speed. We are not dealing with such a case, but with a company chartered as a street railroad, doing a street railroad business and hauling no freight. The case was heard on demurrer, with the opinion of the Commission treated as a part of the record. It indicates that at some points the line is on private property, but where this is and to how great an extent does not appear. Indeed, the record does not show that electricity was used as a motive power, though, in the light of modern methods, that may possibly be assumed. But it affirmatively appears that the company was chartered as a street railroad, and hauls no freight and is doing only a business appropriate to a street railroad.

So that whatever the motive power or the size or speed of the cars is immaterial. In any event, there were "street cars" referred to in the act of Congress authorizing the construction of the Bridge from Council Bluffs to Omaha (24 Stat. 501). The company used such cars and did a street passenger business only. It laid its tracks in crowded thoroughfares of those cities and their suburbs and it is manifest that Congress did not intend that these tracks should be connected with Railroads for hauling freight cars and long trains through and along the streets of Omaha and Council Bluffs.

It is contended, however, that the amendment of June 18, 1910, 36 Stat. 539, 553, c. 309, shows that Congress considered that street railroads were under the jurisdiction of the Commission inasmuch as it then provided that "the Commission shall not establish any through route, classification or rate between street electric passenger railways not engaged in . . . transporting freight . . . and railroads of a different character." It is contended on the other hand that in that statute Congress distinctly recognized that a street electric road was "a different character of railroad," and apprehending that the broad language of the amendment of 1910 might be construed to take in street railroads, this provision was inserted out of abundant caution to prevent that result, as in the case of establishing routes wholly by water, which certainly were not within the terms of the original Act.

This section of the act of 1910, however, having been passed after the order was made by the Commission, Nov. 27, 1909, is not before us for construction and, manifestly, cannot be given a retrospective operation, though the Government insists that it should be given a prospective operation and in its brief contends that "even if the Commission's order was without lawful authority at the time it was made (Nov. 27, 1909) the amendment of 1910 either ratified it altogether, or, at least, validated

it for the future," and, therefore, it was contended "that the judgment should be affirmed, or if not affirmed as rendered, should be modified to set aside the order only in its operation prior to June 18, 1910," on which day the amendment as to electric street passenger cars became effective. *Mattingly* v. *District of Columbia*, 97 U. S. 687; *Lowrey* v. *Hawaii*, 206 U. S. 206; *B. & O. R. R.* v. *I. C. C.*, 221 U. S. 612, are cited to show that Congress might ratify what had not been originally commanded. The first two decisions relate to transactions of a nature entirely different from that here involved; and, in the *Baltimore & Ohio Case*, which was more like this on its facts, the parties pending the suit stipulated that the order should apply only to the future, and it was said that the "question of the authority of the Commission at the time the order was made has become a moot one" (621). There was no such stipulation here, and there being nothing to show that Congress attempted an express ratification, and it being open whether the amendment was intended to confer a jurisdiction not previously given, the motion of the Government to make the order of November 27, 1909, effective from June 18, 1910, cannot prevail.

The decree of the Commerce Court is reversed and that of the three Circuit Judges made permanent.

*Reversed.*

MR. JUSTICE PITNEY did not hear the argument and took no part in the decision of this case.