## In re COLUMBIA RY., GAS & ELECTRIC CO.

District Court, E. D. South Carolina. March 13, 1928.

No. 3601.

**1. Statutes ⬤⟿217—Reports of congressional committees may be resorted to, if language of statute is ambiguous or uncertain.**

If the language of a statute is ambiguous or uncertain, the reports of committees may be resorted to, to assist in ascertaining the intent of Congress.

**2. Statutes ⬤⟿199—If statute shows intent to deal with railroads and street railroads, word "railroad" will include street railroads; otherwise, latter are excluded.**

If scope of a statute relating to railroads shows that both railroads and street railroads were within the legislative contemplation, the word "railroad" will include street railroads; but, if act was aimed at railroads proper, street railroads are excluded from its provisions.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Railroad —Railway.]

**3. Words and phrases—Word "railroad" strictly used is generic and includes street railways.**

The word "railroad," in a strictly accurate sense, is a generic term, and includes all kinds of railroads, whether street railways, horse car lines, cable car lines, electric trolley lines, suburban lines, interurban lines, or steam railroads engaged in general transportation.

**4. Bankruptcy ⬤⟿4—Main purpose of Bankruptcy Act was to provide for applying insolvent's estate for benefit of creditors as rapidly as possible and release debtor from further obligation.**

The main purpose of the Bankruptcy Act (11 USCA) was to provide a method whereby the estates of insolvent debtors would be applied for the benefit of creditors as rapidly as practicable and the unfortunate debtor released from further obligation.

**5. Bankruptcy ⬤⟿43—Street railway held "railroad," not subject to adjudication as bankrupt (Act Gen. Assem. S. C. Dec. 16, 1891 [20 St. at Large, p. 1453]; Bankr. Act, § 4, as amended by Act June 25, 1910, §§ 3, 4 [11 USCA § 22]).**

In view of the scope and purpose of the Bankruptcy Act (11 USCA) and the mischiefs and inconveniences that Congress anticipated would result from allowing railroads to be subject to adjudication in bankruptcy, street railway corporation created by Act Gen. Assem. S. C. Dec. 16, 1891 (20 St. at Large, p. 1453), which operated over 20 miles of tracks within a city and ran to other towns and unincorporated communities, but had no physical connection with steam railroads, *held* a "railroad corporation," within Bankruptcy Act, § 4, as amended by Act June 25, 1910, §§ 3, 4 (11 USCA § 22), and therefore not subject to adjudication as bankrupt (citing Words and Phrases, "Municipal corporations").

**6. Bankruptcy ⬤⟿43—That railroad corporation had ceased to do business held not to affect its status as "railroad corporation," as respects its adjudication as bankrupt (Bankr. Act, § 4, as amended by Act June 25, 1910, §§ 3, 4 [11 USCA § 22]).**

Mere fact that street railway corporation had ceased to conduct railway service or any other business for over ten months before its adjudication as bankrupt did not prevent it from being a "railroad corporation" at time of filing of petition, within Bankruptcy Act, § 4, as amended by Act June 25, 1910, §§ 3, 4 (11 USCA § 22), so as not to be subject to adjudication as bankrupt.

In Bankruptcy. In the matter of the Columbia Railway, Gas & Electric Company, bankrupt. On petition of the State of South Carolina and another that bankruptcy adjudication be vacated. Adjudication vacated.

Elliott & McLain, of Columbia, S. C., and George M. Le Pine, of Reading, Pa., for bankrupt.

Melton & Belser, of Columbia, S. C., for city of Columbia, S. C.

J. B. S. Lyles, of Columbia, S. C., for Broad River Power Co.

J. M. Daniel, Atty. Gen., of South Carolina, and Cordie Page, Asst. Atty. Gen., of South Carolina, for State of South Carolina.

ERNEST F. COCHRAN, District Judge. The Columbia Railway, Gas & Electric Company filed its voluntary petition and was adjudicated a bankrupt. The state of South Carolina and the city of Columbia (the latter being a creditor of the bankrupt) filed a petition praying that the adjudication be vacated, on the ground that the bankrupt is "a railroad corporation" and therefore by the express terms of the Bankruptcy Act, as amended in 1910 (11 USCA § 22), excluded from the operation of the act. A rule was issued for the bankrupt to show cause why the adjudication should not be vacated, and the bankrupt has made return thereto. There is practically no dispute on the facts, which are set forth in the petition of the state and the city and the return of the bankrupt, and it is conceded by both sides that the question to be decided is whether or not the bankrupt is "a railroad corporation," within the meaning of the amending act of 1910.

The bankrupt, formerly named the Columbia Electric Street Railway, Light & Power Company (the name having been changed by the amendment of May 18, 1911), was created by the act of the General Assembly of South Carolina of December

16, 1891 (20 St. at Large, p. 1453), which authorized the consolidation into one grant of the powers and franchises to furnish the public utilities of gas, electric light, and power and transportation service to the city of Columbia and community. The bankrupt under this act acquired the powers and obligations of various corporations, and among them from the Columbia Electric Street & Suburban Railway & Electric Power Company the power to "construct or acquire single or double railway tracks of such gauge as they may elect, through any street or streets of the city of Columbia, with consent of city council, and to extend the same five miles into the country, in any direction or directions they may wish, from the State Capitol," and also the power "to operate their cars in the transportation of passengers and freight over the tracks they may construct or acquire in said city, with electric power, in suitable carriages, and at such rates as may be fixed upon in the by-laws of the same."

From the Columbia Street Railway Company, which the act authorized it to purchase, it acquired similar powers, including the right to extend its tracks "five miles beyond the corporate limits of said city." It also acquired the line of railway which had been constructed into the town of Eau Claire, situated north of the city of Columbia, by the Columbia & Eau Claire Electric Company, under its charter powers "to build, purchase, and operate an electric and suburban railway from Columbia to a point or points in Richland county within eleven miles of said city." By virtue of the consolidating act, it also acquired from the Congaree Gas & Electric Company the power to carry on and conduct the business of using electricity, manufacturing light, heat, or power by electricity or any other agent for lighting or heating streets, roads, etc., stores, residences, etc., steamboats, railroad cars, locomotives, or for other transportation or industrial purposes.

Under these powers, the bankrupt never did any freight transportation business; but it did a passenger business by means of electric trolley lines constructed by it and other companies, whose rights it acquired, in the city of Columbia and to certain points outside the city. Lines were operated in the city of Columbia and to the incorporated towns of Arden, Eau Claire, Shandon, and to various unincorporated communities near the city. During the World War, it also built and operated a line of passenger service to Camp Jackson, about six miles from

the city; but this line was dismantled about the year 1926. On March 11, 1927, the bankrupt discontinued service on all of its railway lines. Prior to this final cessation of all railway passenger service, it had discontinued the operation of certain of its lines, but at that time it was then operating along a number of streets in the city, and beyond the city of Columbia to the incorporated towns of Eau Claire and Arden, the former town of Shandon (the latter town being now included in the city of Columbia), and other unincorporated communities near to, but outside of, the city. The total length of lines operated by it (not including the Camp Jackson line, and counting the double tracks as a single line), was 20 miles and a fraction. The petition alleges and the return admits that the total population of Columbia and the towns and communities referred to is between 50,000 and 60,000. There was no physical connection of the bankrupt's tracks with the steam railroads running into Columbia, but its cars ran to the steam railroad station and carried passengers thereto, as is usual in the case of street railways.

The bankrupt also did a public business of furnishing gas, electric light, power, etc., until June, 1925, when, under authority of the act of the General Assembly of South Carolina of March 19, 1925 (34 St. at Large, p. 842), it sold and transferred all its gas, electric light, power, and other property rights and franchises to the Broad River Power Company, excepting from said sale only its rights and properties and franchise connected with its railway department and service. From the time of this sale, the only business of the bankrupt was a railway passenger service on the various lines last mentioned, until March 11, 1927, when all service was discontinued, as above stated.

On July 28, 1927, the South Carolina Railroad Commission by an order directed the bankrupt to resume railway service, and a bill for an injunction against the enforcement of that order was brought in this court and later stayed, because it appeared that a proceeding had been brought before the Supreme Court of the state against the bankrupt and the Broad River Power Company, accompanied by a stay, to compel them to resume service and to comply with the order of the Railroad Commission. The latter case was pending in the Supreme Court when the bankrupt filed its petition for adjudication.

At the hearing it was conceded by both sides that, inasmuch as the bankrupt had en-

tirely discontinued its business of furnishing gas, electricity, etc., there would be no need to consider what effect, if any, such business might have upon the question involved here, and that the sole question to be decided is whether the bankrupt is a railroad corporation within the terms of the Bankruptcy Act. The bankrupt contends that it is merely an ordinary street railway, and that such railways are not excepted from the terms of the act; while the state and the city contend that the bankrupt is more in the nature of a suburban or interurban railway company, and that in any event street railways are included under the term "railroads," and therefore excluded from the operation of the Bankruptcy Act.

Before discussing the particular point involved, it is advisable to consider the history of the Bankruptcy Act (11 USCA) in this respect. By section 37 of the Bankruptcy Act of 1867 (14 Stat. 535) the provisions of the act were made applicable to all "moneyed business or commercial corporations and joint-stock companies." There were no exceptions in this act, and under it railroad and street railway corporations could be adjudicated bankrupt. But the Bankruptcy Act of 1898 provided (30 Stat. p. 547, § 4) "that any person" owing "debts except a corporation" might become "a voluntary bankrupt," and that "any natural person, * * * any unincorporated company, and any corporation engaged principally in manufacturing, trading, printing, publishing, or mercantile pursuits," might "be adjudged an involuntary bankrupt." It was also provided that "private bankers, but not national banks or banks incorporated under any state or territorial law, might be adjudged involuntary bankrupts." By the act of 1903 (32 Stat. p. 797, § 3) the provisions as to involuntary bankruptcy were extended to include mining corporations.

In this state of the law, no corporation could become a voluntary bankrupt, and when corporations desired to obtain the benefits of this act they resorted to the roundabout method of admitting insolvency and being adjudicated on a petition of creditors in involuntary proceedings. There arose great difficulty as to the proper construction of the provisions of this act concerning corporations permitted to become involuntary bankrupts, and there were a number of decisions which were not entirely harmonious and in some cases directly conflicting. See Report of House Committee of May 16, 1910, accompanying H. R. 20575, p. 4; Report of Senate Committee of February 22, 1910, upon the same bill, p. 4. Congress then passed Act June 25, 1910, c. 412, §§ 3 and 4 (36 Stat. 839 [11 USCA § 22]), amending the act of 1898, and providing that any person, except a municipal, railroad, insurance, or banking corporation might become a voluntary bankrupt. The amending act also substituted for the words "and any corporation engaged principally in manufacturing, trading, printing, publishing, mining, or mercantile pursuits" the words "any moneyed, business, or commercial corporation, except a municipal, railroad, insurance, or banking corporation." These amendments were made pursuant to the recommendations of the two committees above referred to. The reports of the two committees are in this connection identical and they both show that the object of the amendments was to change the law, so as to allow corporations to become voluntary bankrupts with the exceptions mentioned, and to remove the uncertainty relative to the meaning of the words in the act of 1898 relating to corporations being the subject of involuntary bankruptcy proceedings. After adverting to these matters, the committee (page 5) used the following language: "The words substituted are taken from the Bankruptcy Law of 1867, and their meaning has long since been settled by the courts. The reason for exempting the quasi public corporations will be apparent. Banks are excepted from the operation of the law at present. Other business entities having similar responsibilities to the public are now also excepted."

[1] If the language of a statute is ambiguous or uncertain, the reports of committees may be resorted to, to assist in gathering the intent of Congress. Holy Trinity Church v. U. S., 143 U. S. 457, 464, 465, 12 S. Ct. 511, 36 L. Ed. 226; Northern Pacific Co. v. Washington, 222 U. S. 370, 380, 32 S. Ct. 160, 56 L. Ed. 237; McLean v. U. S., 226 U. S. 374, 380, 33 S. Ct. 122, 57 L. Ed. 260; St. Louis, etc., Ry. Co. v. Craft, 237 U. S. 648, 660, 661, 35 S. Ct. 704, 59 L. Ed. 1160; Woodward v. DeGraffenried, 238 U. S. 284, 299, 35 S. Ct. 764, 59 L. Ed. 1310.

The construction to be given to the term "railroad" in the excepting clause of the amending act must of course be the same throughout the United States. The statutes of South Carolina, therefore, are of little, if any, value upon the question, though it would appear that these statutes draw a distinction between the ordinary railroads operated by steam, interurban railroads, and street railways. See Code S. C. 1922, vol. 3, §§ 4359, 4366, 4763, 5003, 5041, 5059.

There are a large number of decisions, state and federal, construing the meaning of the word "railroad" under various statutes; but these decisions are of very little, if any, assistance. In the first place, the statutes are so different, and their context and purposes are so different, as to afford no solution of the present problem. In addition to that, the decisions are in hopeless disagreement. All the cases recognize that, while there is a similarity between railroads and street railroads, there is also a difference. In a large number of cases, the courts, emphasizing the similarity, hold that in statutes the word "railroad" includes street railroads, unless the contrary is required by the context. Others, emphasizing the dissimilarity, hold that "railroad" does not include "street railroads," unless required by the context. They all hold, however, that the meaning of the word is to be determined by construing the statute as a whole.

[2] If the scope of the act is such as to show that both classes of companies were within the legislative contemplation, then the word "railroad" will include street railroads. On the other hand, if the act was aimed at railroads proper, then street railroads are excluded from the provisions of the statute. Omaha Street Ry. Co. v. Interstate Commerce Comn., 230 U. S. 324, 335, 33 S. Ct. 890, 57 L. Ed. 1501.

[3] The word "railroad," in a strictly accurate sense, is a generic term, and certainly includes all kinds of railroads, whether street railways, horse car lines, cable car lines, electric trolley lines, suburban lines, interurban roads, or steam railroads engaged in general transportation. But the word "railroad" is not always used in this broad sense, and indeed it may be conceded that ordinarily and popularly it is generally used when referring to the steam railroads which connect with one another and form a part of the transportation system of railroads throughout the country; and the question whether or not Congress in the Bankruptcy Act intended that it should be understood in its broader or more limited sense is to be determined, as I view it, from a consideration of the scope and purposes of the Bankruptcy Act and the mischiefs or inconveniences which Congress anticipated would result from placing railroads within the operation of the act.

[4] The main purpose of the Bankruptcy Act was to provide a method whereby the estates of insolvent debtors would be applied for the benefit of creditors as rapidly as practicable, and the unfortunate debtor released from further obligation. It is evident, from the report of the committee above referred to, that it was anticipated that grave inconvenience would result if certain corporations of a public and quasi public nature were brought within the scope of that act. It is obvious that, if railroads were allowed to become bankrupts, many and serious difficulties would arise as to their right to be freed from their obligations as public servants, and large communities that depended upon them would be put to great inconvenience, if not to absolute disaster. Every consideration which applies to railroads generally in this respect applies also to street railways. The consequences would be different in degree and intensity merely, not in quality or kind. A city and its people, dependent upon the transportation service of its street railway system, could be paralyzed, temporarily, at least, in their business activities, if those companies could by voluntary petition, or upon the petition of three creditors, be adjudicated a bankrupt.

It is well recognized that, under modern conditions, large public service corporations, like railroad corporations and street railway systems, cannot be put upon the block and sold as a general rule, but must be reorganized. If, in cases of embarrassment, such corporations are left to the ordinary remedies by bills in equity and receivership, that court is fully competent to undertake such reorganization; but the bankruptcy court looks to a prompt sale of the property and distribution of the assets. Under the Bankruptcy Act (U. S. Code, tit. 11, § 11, subd. 5 [11 USCA § 11, subd. 5]) the bankrupt court may authorize the business of bankrupts to be conducted for *limited* periods by receivers, marshals, or trustees, if necessary in *the best interests of the estate*. While the bankrupt court exercises equitable powers, and might authorize the trustee to continue the business of a railroad corporation for limited times, nevertheless that question should, in bankruptcy, as a general rule, be decided with a view to the interests of the estate, and it occurs to me that Congress did not contemplate by the Bankruptcy Act such continuation by trustees of the business of bankrupts as would be necessary in the case of railroad and street railway corporations.

Grave questions might arise, too, as to the right of such corporations to cease business, as have arisen in the case of the present bankrupt, as to the right of the bankrupt, in view of its alleged connection with the Broad River Power Company, to sur-

render its franchise and be released from its obligations. In a word, the machinery of the bankruptcy court is not appropriate to the administration of the affairs of railroad or street railway corporations, involving, as they do, other interests than those of creditors and of the bankrupt, of an important public nature.

It is clear, I think, from the reports of the committees above referred to, that the dominant idea of Congress in excluding railroads from the operation of the act was their quasi public nature and duties. It is true that Congress did not see fit to include all public service corporations and utilities within the exception, and the learned counsel for the bankrupt argue that therefore street railways are not to be deemed excluded because of their quasi public nature. But Congress may have thought for other reasons that it was not wise to exclude other public service corporations than those enumerated. The fact remains, however, that they did exclude railroad corporations, and that it must have been largely, if not entirely, because of their quasi public nature and the inconvenience which would result, if the bankruptcy court were open to them, and such considerations certainly apply to street railways.

The whole argument of the bankrupt is founded on the idea that, inasmuch as the term "railroad" is ordinarily used to mean steam railroads engaged in a general transportation service, that term in the statute should be given the meaning as commonly used and understood, which would not embrace street railways. But the same argument would exclude certain municipal corporations as not within the ordinary meaning of those words, and thus permit them to be the subject of adjudication in bankruptcy. Both "municipal corporations" and "railroad corporations" are excluded from the operation of the act. Municipal corporations, as ordinarily and popularly understood, refer to cities and towns. But the term is frequently used in a much broader sense, including not only cities and towns, but also counties, parishes, townships, and in some cases school districts and generally any district incorporated for local political and governmental purposes. See title "Municipal Corporation," 5 Words and Phrases, 4620 to 4627, where numerous cases on the subject are cited.

It might just as plausibly be argued that Congress used the term "municipal corporations" in its more limited sense, as referring to cities and towns, and yet I venture to assert that no one would seriously contend that only cities and towns are excluded from being adjudicated bankrupts, and the reason is that Congress has used the broad, general term "municipal corporations," which embraces all the different kinds of such corporations, and because they are all within the mischiefs which would result if they were not excluded from the operation of the act. The reason for their exclusion is found in the public and political nature of their functions and obligations. So, by parity of reasoning, Congress used the broad, general term "railroad," and all kinds of railroads must be deemed included in that term, for the mischiefs attending the one case follow in all of them, and the basis for the exclusion of all of them is found in their quasi public functions and obligations.

There is another consideration which is of some force in this connection. There are certainly street railways of an interurban type, running through the streets of a city and from one city to another, which would be included under the term "railroads" under the Bankruptcy Act. This much, I think, must be conceded, and, if so, then great difficulty would be experienced in drawing distinction between the various types of street railways. Some of them do business within a small town or city alone; others extend to various suburban communities beyond the city; still others extend shorter or longer distances between various towns and cities. Some carry only passengers; some carry passengers and express; while others carry passengers, express, and freight. To draw distinctions between these various classes of what may be termed street railways, and say whether any particular one is a railroad proper, and excluded by the act, or a simple street railway only, and not excluded by the act, would be well-nigh impossible.

[5] I do not apprehend that Congress intended that any such refined and subtle distinctions should be drawn. In view of the scope and purpose of the Bankruptcy Act, the mischiefs and inconveniences that Congress anticipated would result from allowing this class of corporations to be the subject of adjudication, I am constrained to the view that the broader and more accurate meaning of the term "railroad" should be adopted here, and that street railways are included within that term. While the state decisions upon this subject are, as above stated, of little, if any, assistance, nevertheless there is one case where the language of

the statute and the circumstances are so closely analogous to the present case that I think it should be adverted to.

In the case of Central National Bank of Worcester v. Worcester Horse R. R. Co., 13 Allen (Mass.) 105, where the question was whether a horse street railroad corporation was within the exception of the general insolvent law, which provided that "any corporation created by authority of this state, except railroad and banking corporations," might institute such proceedings, the Supreme Court of Massachusetts held that the horse railroad in question must fall within the exception of "railroad corporations," and not within the general class of corporations, out of which railroad corporations are excepted. While there are some differences in the other statutes involved in that case from the statutes in question here, nevertheless the analogy is very strong, and the reasoning of the court in that case is very persuasive of the correctness of the conclusion I have reached in this case. Central Nat. Bk. of Worcester v. Worcester Horse R. R. Co., 13 Allen (Mass.) 105.

The bankrupt relies upon the case of In re Grafton Gas & Electric Light Co. (D. C. N. D. W. Va.) 253 F. 668. In that case it was held that a corporation operating something over six miles of electric street railway in the city of Grafton was not a railroad within the meaning of the amending act of Congress of 1910, but was a purely local institution, and was therefore subject to be adjudicated a bankrupt. In the case at bar, my view is that the Columbia Railway, Gas & Electric Company partakes more of the nature of a suburban or an interurban street railway than of a simple street railway in one town or city, and the case referred to might be distinguished from the present case on that ground; but, while I hesitate to disagree with the learned judge who wrote that opinion, nevertheless I prefer to rest my decision upon the broader ground that I think the embarrassment which would result from railroads generally being brought within the purview of the Bankruptcy Act applies to street railway companies practically of all kinds. There may be a few cases of street railways where the facts and circumstances are such that they could not be said to be included within the term "railroad" as used here; but in my opinion most, if not all, of them are within the mischiefs sought to be avoided, and certainly the street railway in the present case is of that type. It is to be noted, too, that in that case the learned judge who wrote the opinion does not appear to

24 F.(2d)—53

have considered the question free from doubt, and appears to have based his decision largely upon the case of Omaha Street Railway v. Interstate Commerce Commission, supra, which I do not think is controlling.

This brings us to the consideration of the last-mentioned case, upon which the bankrupt also relies. In that case, the Supreme Court held that a street railway was not within the term "railroad," as used in the Commerce Act of 1887 (24 Stat. 379); but the decision was based upon the context of that particular act. It was said that every provision of the statute there considered was applicable to railroads, and only a few of its requirements applicable to street railroads; that street railroads were not within the mischiefs sought to be corrected; that the remedial provisions of the statute were not applicable to them; that the commands upon every railroad subject to the act were such that they could not be obeyed by street railroads, because of the nature of their business and character and location of their tracks. For these reasons it was held that the case was within that large line of authorities which hold that under such a statute the word "railroad" cannot be construed to include street railroad. Omaha St. Ry. Co. v. Interstate Commerce Comn., supra.

I do not think this decision of the Supreme Court is in point here, nor do I think that the conclusion I have reached is inconsistent with anything said in that case. The latest case by the Supreme Court upon the subject to which my attention has been called is the case of U. S. v. Village of Hubbard, 266 U. S. 474, 45 S. Ct. 160, 69 L. Ed. 389. In that case it was held that interurban electric railroads engaged in interstate commerce are subject generally to regulation by the Interstate Commerce Commission. The decision was based largely on the fact that neither in the act to Regulate Commerce of February 4, 1887 (24 Stat. 379 [49 US CA; Comp. St. § 8563 et seq.]), nor in any amendment thereto prior to that of June 18, 1910 (36 Stat. 539, 552 [49 USCA § 15; Comp. St. § 8583]), is there any specific reference to electric railroads, and that the basis for the jurisdiction of the Commission over them is the generality of the language of the original act, which declared in section 1 (49 USCA § 1; Comp. St. §' 8563) that its provisions "shall apply to any common carrier or carriers engaged in the transportation of passengers or property * * * by railroad," and, as the act made no distinction between railroads operated by steam

and those operated by electricity, the Commission made none. U. S. v. Village of Hubbard, supra, 478 (45 S. Ct. 160). The conclusion I have reached in the present case is not inconsistent, but in harmony, with the decision in that case.

[6] Counsel for the bankrupt further argue, however, that in any event the right of the bankrupt to be adjudicated must be decided by the nature of the business it was conducting at the time it filed its petition for adjudication, to wit, January 24, 1928, and that, inasmuch as it had not conducted any business of any railway service, or of any other nature whatsoever, after March 11, 1927, it could not be said to be a railroad corporation at the time its petition was filed. I cannot accede to this view. If this were correct, then every corporation falling within the exception of the statute, and thereby excluded from the benefit of the Bankruptcy Act, could by simply ceasing business for awhile come in and be adjudicated a bankrupt, in the very case in which the act of Congress said it should have no such right. Such a destructive construction of the act of Congress is inadmissible in any aspect of the case.

For these reasons, I think it must be held that the adjudication was improvidently granted, and must be vacated and set aside, and an order to that effect will be entered accordingly.