## INLAND WATERWAYS CORPORATION v. ATLANTIC COAST LINE R. CO.

### No. 4610.

Circuit Court of Appeals, Fourth Circuit.

June 10, 1940.

Nuel D. Belnap, of Chicago, Ill. (John J. Wicker, Jr., of Richmond, Va., on the brief), for appellant.

Richard B. Gwathmey, of Wilmington, N.C. (J. M. Townsend, of Petersburg, Va., on the brief), for appellee.

Before PARKER, SOPER, and NORTH-COTT, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is a civil action brought in March, 1939, by the appellant, Inland Waterways Corporation, here referred to as the plaintiff, in the District Court of the United States for the Eastern District of Virginia, against the appellee, Atlantic Coast Line Railroad Company, here referred to as the defendant. The object of the action was to recover damages for a violation of the Interstate Commerce Act, Title 49, U.S.C.A. § 15, par. 9, in the sum of $85.68, with interest and costs and a reasonable attorney's fee. A hearing was had before the judge, a jury being waived, and in November, 1939, the judge filed an opinion finding for the defendant. 30 F.Supp. 124. From a judgment entered in accordance with the opinion the plaintiff brought this appeal.

The facts are undisputed and were stipulated. The plaintiff is a corporation created by an Act of Congress and operates the Federal Barge Lines, a common carrier by water, on the Mississippi River. The defendant is a Virginia corporation and operates as a common carrier by railroad throughout the southeastern states.

In November, 1936, a shipper delivered to the defendant, at Dothan, Alabama, a carload of peanuts to be delivered to St. Louis, Missouri, with written directions to transport the shipment over a through route composed of the lines of the defendant and connecting rail carriers to Vicksburg, Mississippi, and the barge line of the plaintiff from Vicksburg to St. Louis. The defendant issued its bill of lading with the route specified as directed.

Prior to the date of the shipment in question the plaintiff and the defendant had joined with various connecting rail carriers in publishing and maintaining a tariff showing a joint rate on shelled peanuts from Dothan, Alabama, to St. Louis, Missouri, which tariff was filed with the Interstate Commerce Commission.

The defendant did not cause the shipment to be transported over the route designated by the shipper but, on the contrary, caused said shipment to be diverted therefrom, in that it delivered said shipment to the Mobile & Ohio Railroad Company at Montgomery, Alabama, under routing instructions reading "ACL-Mont.-M&O", and said shipment was transported by the said Mobile & Ohio Railroad Company via its route from Montgomery, Alabama, to St. Louis, Missouri.

Had the defendant caused the shipment to be transported over the route designated by the shipper the plaintiff would have been entitled to, receive, as its compensation for transporting the peanuts from Vicksburg to St. Louis, the sum of $85.68. The plaintiff demanded this sum of the defendant and upon defendant's refusal to pay brought this action.

The statutes involved are paragraphs (8) and (9) of Section 15 of the Interstate Commerce Act, 49 U.S.C.A. § 15(8, 9), which read as follows:

"Section 15, par. (8) Shipper's choice of route to be observed. In all cases where at the time of delivery of property to any railroad corporation being a common carrier for transportation subject to the provisions of this chapter to any point of destination, between which and the point of such delivery for shipment two or more through routes and through rates shall have been established as in this chapter provided to which through routes and through rates such carrier is a party, the person, firm, or corporation making such shipment, subject to such reasonable exceptions and regulations as the Interstate Commerce Commission shall from time to time prescribe, shall have the right to designate in writing by which of such through routes such property shall be transported to destination, and it shall thereupon be the duty of the initial carrier to route said property and issue a through bill of lading therefor as so directed, and to transport said property over its own line or lines and deliver the same to a connecting line or lines according to such through route, and it shall be the duty of each of said connecting carriers to receive said property and transport it over the said line or lines and deliver the same to the next succeeding carrier or consignee according to the routing instructions in said bill of lading: Provided, however, That the shipper shall in all instances have the right to determine, where competing lines of railroad constitute portions of a through line or route, over which of said competing lines so constituting a portion of said through line or route his freight shall be transported."

"Section 15, par. (9) *Liability of carriers where property is delivered contrary to routing instructions.* Whenever property is diverted or delivered by one carrier to another carrier contrary to routing instructions in

the bill of lading, unless such diversion or delivery is in compliance with a lawful order, rule, or regulation of the commission, such carriers shall, in a suit or action in any court of competent jurisdiction, be jointly and severally liable to the carrier thus deprived of its right to participate in the haul of the property, for the total amount of the rate or charge it would have received had it participated in the haul of the property. The carrier to which the property is thus diverted shall not be liable in such suit or action if it can show, the burden of proof being upon it, that before carrying the property it had no notice, by bill of lading, waybill or otherwise, of the routing instructions. In any judgment which may be rendered the plaintiff shall be allowed to recover against the defendant a reasonable attorney's fee to be taxed in the case."

The sole question for determination is whether paragraph (9), above set out, applies to the plaintiff and confers upon it the right to recover from the defendant the amount claimed.

It is the contention of the defendant that paragraphs (9) and (8) are in pari materia and that when so read paragraph (9) should be construed as applying only to carriers by railroad and the judge below sustained this contention. In this we are of the opinion he was in error.

■ A study of paragraph (9) does not disclose any ambiguity or uncertainty. Plain words are used and when taken according to their ordinary meaning the intent of the statute is clear. A "carrier" is given the right of recovery when a shipment is diverted and that the plaintiff was a carrier within the meaning of the act cannot be doubted. Section 1(3) of Part I of the Act, 49 U.S.C.A. § 1(3), gives the definition of the word "carrier", as used in the act, as follows: "The term 'common carrier' as used in this chapter shall include * * *; and all persons, natural or artificial, engaged in such transportation or transmission as aforesaid as common carriers for hire. Wherever the word 'carrier' is used in this chapter it shall be held to mean 'common carrier.'"

■ It is only where there is some ambiguity in the statute or some uncertainty as to the meaning intended that resort may be had to rules of construction of statutes. Other parts of the same act, or the debates in Congress, during the passage of the statute, can throw no light on that

which is already made plain by the words used in the statute itself. "The act must be interpreted by its own terms, * * *." Omaha & Council Bluffs Street Railway Company v. Interstate Commerce Commission, 230 U.S. 324, 33 S.Ct. 890, 891, 57 L. Ed. 1501, 46 L.R.A.,N.S., 385.

See, also, United States v. St. Paul, M. & M. R. Co., 247 U.S. 310, 38 S.Ct. 525, 62 L.Ed. 1130; Mackenzie v. Hare, 239 U. S. 299, 36 S.Ct. 106, 60 L.Ed. 297, Ann.Cas. 1916E, 648.

■ We can find no inconsistency in the two paragraphs (8) and (9). It does not follow that even if paragraph (8) is construed to impose an obligation on railroad carriers only to obey the designation of the shipper as to the route that paragraph (9) should also be interpreted as having application to railroad carriers only. In the Interstate Commerce Act will be found paragraphs restricted in their application to carriers by railroad while other paragraphs in the same section are made applicable to all common carriers participating in interstate transportation and made subject to regulation. United States v. American Railway Express Company et al., 265 U.S. 425, 44 S.Ct. 560, 68 L.Ed. 1087.

It may well be that paragraph (9) gives all carriers the right to recover for a breach of duty imposed upon rail carriers only by paragraph (8).

■ It is also contended by the defendant that the plaintiff, under a proper construction of the act creating it, (Act of June 3, 1924, as amended by the Act of May 29, 1928, 49 U.S.C.A. §§ 151 et seq.) is not subject to the provisions of paragraphs (8) and (9) above set out. A study of the acts in question leads us to the conclusion that it was plainly the intention of Congress to subject the plaintiff corporation, the capital stock of which was all owned by the United States Government, to the jurisdiction of the Interstate Commerce Commission. That Commission has repeatedly exercised such jurisdiction over the plaintiff corporation. United States War Dept. v. A. & S. Ry., 77 I.C.C. 317. E. I. Du Pont de Nemours & Co. v. Mississippi Warrior Service, 153 I.C.C. 283. Armstrong Cork & Insulation Company v. Mississippi-Warrior Service et al., 153 I.C.C. 781. American Warehouseman's Ass'n v. Inland Waterways Corporation, 188 I.C.C. 13. Control of Warrior River Terminal Co., 111 I.C.C. 654.

It is argued in defendant's brief that plaintiff, having performed no transportation service whatsoever in connection with the shipment in question, should not be allowed to recover in this action unless clear and explicit language would authorize such recovery. Certainly the "clear and explicit" language is found in paragraph (9) and, in view of the fact that plaintiff was prevented from performing any service as to the shipment, by the wrongful act of the defendant, little weight should be given to such an argument.

It was the plain duty of the defendant to send the shipment as directed by the shipper; this it did not do, and by its act it became liable to the plaintiff under the express terms of paragraph (9).

Reversed.