NEW ENGLAND ENGINEERING CO. v. OAKWOOD ST. RY. CO.

(Circuit Court, S. D. Ohio, W. D.   July 13, 1896.)

1. MECHANICS' LIENS—STREET RAILROADS—OHIO STATUTES.
   The Ohio statute of March 20, 1889 (86 Ohio Laws, p. 120), giving a lien to mechanics, laborers, etc., for work done upon "any railroad, turnpike, plank road, canal, or on any public structure," applies to street railroads.

2. SAME—TIME OF FILING STATEMENT.
   Plaintiff constructed a steam-power plant for defendant, under a contract providing that the final settlement therefor was to be made 30 days after the machinery was started. It was started on June 29th, but plaintiff, at defendant's request, continued in charge of the plant, and operating the same, until August 1st, and during that time, at defendant's request, furnished certain extra material and did extra work, the last on July 29th. On August 13th plaintiff filed a sworn statement of the work done and material furnished, for the purpose of securing a mechanic's lien. Held, that such statement was filed within 30 days after the work was performed or materials furnished, within the meaning of section 2 of the Ohio statute relating to mechanics' liens on railroads. Act March 20, 1889 (86 Ohio Laws, p. 120).

3. CONSTITUTIONAL LAWS—DUE PROCESS OF LAW—OHIO MECHANIC'S LIEN LAW.
   Even if section 3 of the same act, which provides that any lienor shall be entitled, upon filing a bond in the amount of his claim, to an injunction restraining the operation or use of the property subject to the lien, until his claim is paid, is unconstitutional and void, as depriving the owner of the use of his property without due process of law, as the main object of the act was the creation of the lien, to which said section 3 was only incidental, the invalidity of that section does not render the remainder of the act invalid.

This bill was filed by the New England Engineering Company, a corporation under the laws of the state of Illinois, against the Oakwood Street-Railway Company, a corporation operating a street railway under the laws of the state of Ohio, in the city of Dayton.

The bill is filed for the purpose of foreclosing a mechanic's lien for the balance due on a contract for the furnishing of steam engines as part of the plant of an electric street-railway company in the city of Dayton, Ohio. By the contract, dated December 21, 1894, the New England Engineering Company agreed to furnish to the street-railway company a complete steam-power plant, in running order, at the railway station known as the present car barns of the street-railway company, in the city of Dayton, all for the sum of $28,000. The contract describes the engines and particular machinery and boilers, piping, pumps, foundations, etc. The terms of payment were as follows: "When machinery is delivered at site, you are to pay us $10,000 cash; thirty days after plant is started, $10,000 cash; and one note for ninety days, $3,000; one note for six months, $3,000; one note for nine months, $2,000,—without interest, and indorsed by the president of the street-railway company, Mr. Charles B. Clegg." As to the time of completion, the engineering company agreed as follows: "We will complete the above plant in running order on or before March 15th, 1895, barring unavoidable accidents, and providing the generators are placed on foundations ready for the reception of our transmission work on or before March 15th, 1895." The bill avers that the complainant proceeded to do the work provided in the contract, and to build and furnish the machinery, but was prevented by unavoidable accident from completing the work at the time provided in the contract, and was unable to complete the same before the 3d day of August, 1895; that owing to the unavoidable accidents and obstructions due to the cold weather, and to the fact that the defendant company willfully obstructed complainant from carrying on the work provided in the contract, the delivery of

the machinery at the site of the power house was not completed until the 9th day of April, 1895; that upon that day the street-railway company paid to complainant the sum of $10.000, in accordance with the terms of the contract; that, on the 29th of June, the plant was started in operation, under the direction of complainant, and that, at the request of the street-railway company, complainant thereafter continued in charge of the plant, operating the same, until on or about the 1st day of August, at which time complainant turned over and delivered the same to the street-railway company; that there became due and payable the sum of $10,000, cash, on the 29th day of July, 1895, and that complainant, upon the same day, became entitled to receive from the Oakwood Street-Railway Company the three promissory notes in the contract described, but that the defendant then refused, and still refuses, to pay the complainant either the sum of $10,000, or to deliver the promissory notes; that complainant, in addition to the work done under the contract, did some extra work, and furnished some extra materials, at the request of defendant, amounting in all to $2,100; that this extra work and these extra materials were furnished during the months of June and July, the last having been delivered upon the 29th day of July; that on the 13th day of August, 1895, and within thirty days after the work was performed and the materials furnished, the complainant filed with the recorder of Montgomery county, Ohio, within which the work was done and materials furnished, a sworn and itemized statement of the work done and materials furnished, for the purpose of securing its claim against the Oakwood Street-Railway Company; and that the same is now on record in the recorder's office in Montgomery county, and a copy thereof is attached to the bill, and made part thereof. Complainant avers that, by virtue of this recording, it has obtained a lien, under the statutes of Ohio, upon the car barn, power house, all the machinery therein, also upon the land upon which the buildings are situate, which is described particularly in the bill, and also upon the entire line and tracks of the Ohio Street-Railway Company, together with its rolling stock, of whatever sort. The complainant prays an injunction against the removal of the machinery, put in by it, from the power house, which the defendant threatens, and also prays that the property upon which the claim is a lien may be sold under the decree of the court, and, out of the money arising therefrom, that the entire debt due the complainant, amounting to $20,200, with interest from July 29, 1895, may be paid over to the complainant, for the satisfaction of its lien, and, in case the property should not sell for a sufficient sum to satisfy the lien, that a decree may be made in favor of complainant for the balance unpaid, and execution awarded therefor. The defendant street-railway company appears, and files a demurrer to the bill, and, for cause of demurrer, shows—First, that the bill does not contain any matter of equity whereon this court can grant any decree; second, that, at the time of the filing of the sworn and itemized statement of the amount of work done and material furnished, there was not, and there is not now, any statute authorizing any such statement to be filed with the county recorder for the purpose of obtaining a lien against any property of the street-railway company; third, because the sworn and itemized statement furnished as alleged was not filed with the recorder within 30 days after the work was performed or materials furnished.

Harmon, Colston, Goldsmith & Hoadly, for complainant.
Paxton, Warrington & Boulet and McMahon & McMahon, for respondent.

TAFT, Circuit Judge (after stating the facts as above). The demurrer was intended to present three points: First. That the statute upon which complainant relies does not apply to a street-railway company. Second. If it does apply, that the statute itself is unconstitutional and void. Third. That, even if the statute is valid and applies to street-railway companies, the recording of the lien was not perfected within the 30 days after the rendering of the

work and the furnishing of the material, as required by the terms of the statute. Of these in their order.

1. The statute relied on is an act entitled "An act to fix responsibility and to protect labor and the rights of contractors and subcontractors on all public works or work done for companies, corporations, contracting companies or individuals." It was passed March 20, 1889, and is to be found in 86 Ohio Laws, p. 120. The first section of the act provides as follows:

"Sec. 1. Be it enacted by the general assembly of the state of Ohio, that any person who shall have performed common or mechanical labor upon, or furnished supplies to any railroad, turnpike, plank road, canal or on any public structure being erected, or on any abutment, pier, culvert or foundation for same, or for any side track, embankment, excavation or any public work, protection, ballasting, delivering or placing ties, or track-laying, whether the labor is performed for, or the supplies or material is furnished to any company, corporation, contractor or sub-contractor, construction company or individual, shall have a first, immediate and absolute lien on the whole of the property on which said work is done, and to which said supplies have been contributed, and shall hold the railroad, canal, turnpike, plank road or structure to the creation or construction of which the said labor or supplies has been contributed or so much thereof as may have been in whole or in part created by said labor or supplies, to the exclusion of any railroad, canal, turnpike, plank road, public work or structure, as to operation, occupation or use, until the claim for such labor or supplies is properly adjusted and paid in full."

The contention is that the term "railroad," as used in this section, refers to commercial or traffic railroads, as distinguished from "street railways." It is said that in the statutes of Ohio the usus loquendi requires that the term "railroad," when used without qualification, should be held to mean commercial or traffic railroads, and not those which are used for passenger purposes upon the streets of cities and villages.

Part 2, tit. 2, of the Statutes of Ohio, is devoted to corporations. Chapter 2 of that title is devoted to railroad companies. By section 3309a, which was passed subsequent to the revision of the statutes on the 20th of March, 1884 (81 Ohio Laws, p. 57), there was a proviso as follows:

"That nothing in this section or in the sections of the Revised Statutes relating to railroad companies prior to section thirty-four hundred thirty-seven, other than in sections thirty-two hundred and eighty-seven, thirty-two hundred and eighty-eight, and thirty-two hundred and eighty-nine shall be construed as affecting street railroads."

There is under the title "Railroad Companies" a subhead "Street Railways." It may be that in sections properly within the chapter on railroad companies, and in amendments to those sections, there is a distinction made between railroad companies and street-railroad companies, and that, where the term "railroad" is used, the presumption is that it means a traffic railroad. We do not, however, have to decide this question.

The act here in controversy is not an amendment to any act in relation to railroad companies which would come properly within the purview of chapter 2, on railroad companies, in the Revised Statutes. This act of 1889 is properly inserted as an amendment to chapter 4, div. 2, tit. "Liens," by the learned editors of Smith

& Benedict's Revised Statutes, giving it the numbers 3231—1; 3231—2, 3231—3, 3231—4, and 3231—5. It does not seem to me, therefore, that the section referred to, which furnishes a rule for construing only the chapters on railroad companies, has much, if any, bearing upon the construction of the first section of the act under consideration. We are to determine from the association in which the term occurs whether street railroads would naturally be included within it. I am very clear that the doctrine, "Noscitur a sociis," establishes that the word "railroad," in this connection, includes "street railroads." It was intended to secure the rights of laboring men, contractors, and subcontractors on all public works; and, in the sense of the statute, a railroad, a turnpike, a plank road, or a canal is a public work, though it may be built by a private corporation. Certainly, the public policy which would furnish a lien to one working upon a turnpike or a plank road or a canal or a traffic railway would be likely to provide a lien for one working upon a street railway. While mechanic's lien laws should not be strained to mean more than their language will justify, they are not to receive a narrow construction, and every purpose that is within the letter and policy of the law should be given effect. Even if a street railroad were not included within the term "railroad," I think it would come within the expression "any public structure." The street railway is a public structure in the sense that it is constructed on the public street for public purposes, though operated by a private corporation for gain. The case of Rutherfoord v. Railroad Co., 35 Ohio St. 559, is not an authority against this view. In that case the act authorized a mechanic's lien on "any house, mill, manufactory or other building, appurtenance, fixture, bridge or other structure and on the interest of the owner of the same, on the lot of land on which the same shall stand or be removed to, for labor performed or machinery or materials furnished by the contractors for erecting, altering, repairing or removing the same." It was held that the act did not authorize such a lien upon a railroad. This result was reached by a reasonable application of the maxim, "Noscitur a sociis." It was thought a misnomer to call a strip of land for a right of way from Cincinnati to Portsmouth a "lot of land," and there was nothing named in the statute of a kindred significance to that of a railroad. In the case at bar a street railroad is certainly a structure like those mentioned in the act under consideration, and therefore comes within the general words used, if not included as a railroad.

In the case of Pennsylvania Steel Co. v. J. E. Potts Salt & Lumber Co., 22 U. S. App. 537, 11 C. C. A. 11, and 63 Fed. 11, the court of appeals of this circuit held that there was no authority for the taking of the lien on a railroad under a statute which provided a mechanic's lien for the repairing or erection of any house, building, machinery, wharf, or structure. But in that case Judge Severens, who delivered the opinion of the court, referred to the cases in which "railroad" had not been included within the general words of the mechanic's lien statute and to those in which it had been so included. He refers to the case of Giant Powder Co. v. Oregon Pac. Ry. Co., 42

Fed. 470, in which a statute which gave a lien for the furnishing of material in the construction of any building, wharf, bridge, ditch, flume, tunnel, fence, machinery, or aqueduct, or any other structure or superstructure, was held to give a lien for explosives furnished in the construction of defendant's railroad, and it was held that the words did include "railroad." Referring to Judge Deady's opinion in that case, Judge Severens says:

"He quotes and applies the maxim of construction, 'Noscitur a sociis,' and from such application it appeared plainly that the words 'or any other structure, * * * aqueduct,' were intended to include structures of a similar character. It was by the application of the same maxim that the supreme court of Ohio, in the case before referred to [Rutherfoord v. Railroad Co.], held that the word 'structure,' interpreted by reference to the more restricted words in their statute, did not include railroads. Indeed, it would seem that the application of this rule of construction has been quite generally decisive of the interpretation to be given to the general words in these statutes."

See, also, Forbes v. Electric Co., 19 Or. 61, 23 Pac. 670; Helm v. Chapman, 66 Cal. 291, 5 Pac. 352; Central Trust Co. of New York v. Sheffield & B. Coal, Iron & Railway Co., 42 Fed. 106.

It is very clear to me that the narrowest construction of the statute in question would not exclude street-railway companies from its operation.

Reference is made, in support of the contention that the term "railroad" means "traffic railroad," to section 3 and 4 of the act, which provide that the engineer in charge of the work shall furnish to any contractor or mechanic interested a full statement of the quantities in each class of work done or supplies or material furnished by the parties interested, and that the specifications of this section 4 are such as to show that the work contemplated is that of embankments and excavation, a character of work never done in the construction of street-railway companies. We do not think that this circumstance is controlling. The same construction would lead to the result that no work done on the plank road or a turnpike or a canal other than that of excavation or filling is the subject of a lien under the statute, and this certainly would be absurd.

2. It is claimed that the act is unconstitutional, and reliance is had for this contention on the third section of the act, which is as follows:

"Sec. 3. Any construction company, contractor, mechanic, laborer or person contributing supplies or material to any work named in section one of this act, shall at the time of filing the sworn statement of account as provided in section two of this act, file a good and sufficient bond of indemnity for an amount equal to the amount claimed, which bond shall be approved by the probate judge, and shall be so conditioned as to save and protect the defendant in any case arising under this act, and shall then be entitled to a decree of the common pleas court, enjoining and prohibiting the operation, use or occupancy of the property created in whole or in part by the party or parties asking for said injunction; and the said injunction shall not be dissolved until the court is satisfied that the claim has been adjusted and paid in full."

If the statute is to be read as mandatory, according to the words used, it cannot be doubted that it would be depriving an owner

of a structure like that described in the act of its use without due process of law, because the claimant is given by the section the absolute right to an injunction against the use by the owner of the public structure upon which the work is alleged to have been done, merely by the filing of his claim and the bond of indemnity in a sum equal to the amount claimed; and the provision of the statute is that the injunction shall not be dissolved until the court is satisfied that the claim has been adjusted and paid in full. If read literally, the section certainly takes away all judicial discretion to withhold or refuse an injunction, and requires that the whole structure, though it may be 200 miles in length, shall cease to be used as a railroad, canal, or plank road until the owner shall have adjusted and paid the claim made. It is perfectly obvious that a bond for the amount claimed might be no indemnity for the damage which would ensue from such an injunction. It is also obvious that an injunction granted without a hearing upon the merits of the claim, such as the act contemplates if its language is to be given ordinary effect would be depriving the owner of the use of his property without a day in court. Whether the words of the section might not be whittled down in their meaning by construction so as to vest in the court the discretion to withhold or grant the injunction according to the circumstances, as in other cases, we need not discuss. Judge Voris, of the Summit county common pleas court, of Ohio, held this section 3 to be invalid, on the ground that it attempts to place a limitation upon the judicial power of the state, and deprives the party of his property without remedy by due course of law. Creech v. Railroad Co., 29 Wkly. Cin. Law Bul. 112.

I do not find it necessary to decide the question mooted with respect to section 3 however, because, assuming it to be invalid, I think the rest of the law may very well stand. The main object of the law was to give a lien for work done on the structures mentioned in the act. Section 3 is a mere special mode of enforcing the payment of the lien. If section 3 had not been in the act, there would be no difficulty in carrying out the provisions of the other sections, though no particular proceeding was mentioned by which the lien could be enforced. Unless we are to suppose that the legislature's sole purpose in this act was to enable a lien claimant to take the owner by the throat, so to speak, and compel payment by force of an injunction, the contention that the act becomes inoperative by reason of the invalidity of the third section must fail. We cannot impute to the legislature any such intention. Its main purpose was to create a lien in cases where its existence was previously doubtful. The lien being created, the remedy is manifest. It is not necessary to refer to authorities to show that part of the act may be valid and part invalid by reason of its constitutional restriction. In such cases the court must be able to say from an examination of the whole act that the legislature would have passed that which is valid even if it had been advised that the invalid section would be declared so. Field v. Clark, 143 U. S. 649–695, 12 Sup. Ct. 495; Huntington v. Worthen, 120 U. S. 97–102, 7 Sup. Ct.

469; Allen v. Louisiana, 103 U. S. 80–83; Treasurer v. Bank, 47 Ohio St. 523, 25 N. E. 697; Packet Co. v. Keokuk, 95 U. S. 89. The result is that the statute does declare a lien upon street railways in favor of contractors, subcontractors, and laboring men for material furnished and labor done; and the court of equity is the only federal court in which such a lien can be enforced, by the sale of the property burdened, and the application of the proceeds thereof to the payment of the lien. Davis v. Alvord, 94 U. S. 545.

Finally, we come to the question whether the proceedings to perfect the lien in this case were seasonably taken. The second section of the act is as follows:

"Sec. 2. When it shall be deemed necessary for any constructing company, contractor, sub-contractor, mechanic, laborer or person contributing supplies or material to secure their claim against any railroad, canal, turnpike, plank road, public work or public structure, either for work done or material furnished, they shall file a sworn itemized statement within thirty days after said work was performed or materials furnished, of the amount of work done or materials furnished, showing the balance due and claimed for labor or material furnished, with the recorder of the county or counties within which said work was done or materials furnished. And if several liens be obtained by several persons on the same job, in the manner prescribed by this act, they shall have no priority among themselves, but payments thereon shall be made pro rata."

The bill charges that the complainant, at the request of the defendant, operated the machinery after it had been started for a month, and also furnished during that month extra materials and extra labor, so that the last item for labor and materials furnished bears the date of the 29th of July, while the sworn and itemized statement of account was filed with the recorder on the 13th of August. It is very clear from these averments of the bill that the work under contract and that added by stipulation thereto were not completed until the 29th of July. The engine was started on the 1st or 2d of July, and from that time the complainant claims interest in accordance with the terms of the contract, which provides for the second $10,000 cash, and the delivery of the notes, when the machinery is started. I think it may be very doubtful whether the contract does not mean the starting of the machinery by the street-railway company; but, whether this be true or not, it is certain that the work was not done and the materials were not furnished, all of them, within the meaning of the statute, until the 29th of July. This objection, therefore, cannot be sustained.

We have thus considered all the grounds of demurrer, and find them not to be well taken. The demurrer will be overruled, and the defendant required to answer within 10 days.