**COLUMBIA RY., GAS & ELECTRIC CO. v. STATE OF SOUTH CAROLINA et al.**

**COLUMBIA RY., GAS & ELECTRIC CO. et al. v. SAME.**

Circuit Court of Appeals, Fourth Circuit. June 12, 1928.

Nos. 2737, 2738.

1. **Street railroads** ☞3—Street railroad companies are "public service corporations," subject to state and municipal supervision.

Street car companies, as well as railroad companies, are "public service corporations," as owing their existence to sovereign power, exercising power of eminent domain, primarily created and organized in public interest, and charged with duty of maintaining and conducting enterprise under supervision and control of state and municipal legislative and executive authorities.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Public Service Corporation.]

2. **Street railroads** ☞18—Street car company holds special privileges, conferred in consideration of providing public transportation facilities, as agent and trustee of sovereign power.

Special privileges conferred on street car company, in consideration of providing facilities for public communication and intercourse, are held by it as agent and trustee of sovereign power, and are in no sense private, but continue to be portion of public interests after grant.

3. **Street railroads** ☞66—Street car companies cannot disable themselves from performing functions in consideration of which special privileges were granted them by public.

Street car companies may not by their own acts disable themselves from performing functions in consideration of which public grant of special privileges was made.

4. **Bankruptcy** ☞43—Creditors' loss and public hardship by discontinuance of service should not be augmented by enabling street car company to declare itself bankrupt (Bankr. Act [11 USCA]).

Great financial loss to creditors and serious embarrassment and inconvenience to public by summary discontinuance of street car service should not be augmented by enabling street railway corporation to declare itself bankrupt under Bankruptcy Act (11 USCA), and avoid liability for its debts and obligations through bankruptcy court.

5. **Bankruptcy** ☞11—Bankruptcy court exclusively administers Bankruptcy Act (11 USCA).

The bankruptcy court enforces and administers the Bankruptcy Act (11 USCA), not concurrently with, but exclusive of, other courts.

6. **Bankruptcy** ☞43—Street railway companies cannot be adjudicated bankrupts; "railroad" (Act June 25, 1910, §§ 3, 4 [11 USCA § 22], amending Bankr. Act, § 4, as amended by Act Feb. 5, 1903, § 3).

Street railway company is not entitled to adjudication as bankrupt, in view of Act June 25, 1910, §§ 3, 4 (11 USCA § 22), amending Bankruptcy Act, § 4, as amended by Act Feb. 5, 1903, § 3; by providing that any person "except a municipal, railroad, insurance or banking corporation" may become a voluntary bankrupt; word "railroad," which, in absence of anything indicating its use in restricted sense, should be given its broadest signification, including street railways.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Railroad—Railway.]

7. **Bankruptcy** ☞43—Electric railway company, operating lines in city and neighboring villages, held suburban or interurban street railway, not entitled to adjudication as bankrupt, rather than simple street railway (Act S. C. Sept. 16, 1891 [20 St. at Large, p. 1453]; Act Cong. June 25, 1910, §§ 3, 4 [11 USCA § 22], amending Bankr. Act, § 4, as amended by Act Feb. 5, 1903, § 3).

Columbia Railway, Gas & Electric Company, operating about 20 miles of electric trolley lines in city of Columbia, S. C., and neighboring villages, as authorized by Act S. C. Sept. 16, 1891 (20 St. at Large, p. 1453), held more of a suburban or interurban street railway, included in word "railroad," as used in Act Cong. June 25, 1910, §§ 3, 4 (11 USCA § 22), amending Bankruptcy Act, § 4, as amended by Act Feb. 5, 1903, § 3, prohibiting railroad corporations from becoming bankrupts, than simple street railway in one town or city.

8. **Bankruptcy** ☞43—Street railway company's discontinuance of service before inaugurating bankruptcy proceedings did not entitle it to adjudication (Act June 25, 1910, §§ 3, 4 [11 USCA § 22], amending Bankr. Act, § 4, as amended by Act Feb. 5, 1903, § 3).

That street railway company had discontinued service on its car lines at time of inaugurating voluntary bankruptcy procedings did not entitle it to adjudication as bankrupt, under Act Cong. June 25, 1910, §§ 3, 4 (11 USCA § 22), amending Bankruptcy Act, § 4, as amended by Act Feb. 5, 1903, § 3.

9. **Bankruptcy** ☞391(4)—Order staying mandamus proceedings in state court pending bankruptcy proceedings by respondent street railway company was properly vacated on dismissal of bankruptcy petition (Act June 25, 1910, §§ 3, 4 [11 USCA § 22], amending Bankr. Act, § 4, as amended by Act Feb. 5, 1903, § 3).

Order adjudicating street railway company as voluntary bankrupt having been properly set aside, bankruptcy denied, and petition dismissed, in view of Act June 25, 1910, §§ 3, 4 (11 USCA § 22), amending Bankruptcy Act, § 4, as amended by Act Feb. 5, 1903, § 3, order staying mandamus proceedings in state court to compel resumption of street railway service pending bankruptcy proceedings became ineffective, and was properly vacated and annulled.

Appeals from the District Court of the United States for the Eastern District of South Carolina, at Columbia, in Bankruptcy; Ernest F. Cochran, Judge.

Petitions by the Columbia Railway, Gas & Electric Company and another for adju-

dications of bankruptcy and stay of mandamus proceedings against them in the Supreme Court of South Carolina, opposed by the State of South Carolina and others. From orders vacating, revoking, and setting aside an order of adjudication, and an order staying such proceedings (24 F.[2d] 828 and 25 F.[2d] 329), petitioners appeal. Affirmed.

W. C. McLain and J. B. S. Lyles, both of Columbia, S. C. (George M. Le Pine and C. Edward Paxson, both of Reading, Pa., on the brief), for appellants.

Irvine F. Belser, of Columbia, S. C., and Cordie Page, Asst. Atty. Gen., of South Carolina (John M. Daniel, Atty. Gen., of South Carolina, and Melton & Belser, C. T. Graydon, W. S. Nelson, and Colin S. Monteith, all of Columbia, S. C., on the brief), for appellees.

Before WADDILL, PARKER, and NORTHCOTT, Circuit Judges.

WADDILL, Circuit Judge. These two appeals were heard together upon a single record and will be so disposed of in this court. The litigation involves the properties of the Columbia Railway, Gas & Electric Company, and the operation of the same, and arises particularly in the bankruptcy proceeding pending in the United States District Court for the Eastern District of South Carolina, and upon the orders and decrees seeking to stay certain proceedings pending in the Supreme Court of South Carolina also affecting said properties.

The Columbia Railway, Gas & Electric Company was created by act of the South Carolina Legislature of September 16, 1891 (20 St. at Large, p. 1453), authorizing the merger and consolidation into one company of the franchises and powers of various public service corporations, whose franchises and functions are fully described in the opinion of the court below (24 F.[2d] 828), to furnish the public utilities of gas, electric light and power, and transportation service to the city of Columbia, S. C., and vicinity, under authority duly secured for that purpose. The corporation so created operated a passenger service on the electric trolley lines constructed by it and the other companies whose properties it had acquired, in Columbia and other neighboring towns and communities, namely, the villages of Arden, Eau Claire, and Shandon, the system having a total trackage of about 20 miles. The company also furnished gas, electric light, and power to the public, having acquired the power plant of the Congaree Electric & Power Company under the aforesaid merger act of 1891.

In June, 1925, under authority of the act of the South Carolina Legislature of March 19, 1925 (34 St. at Large, p. 842), the Columbia Railway, Gas & Electric Company executed a deed purporting to convey to the Broad River Power Company which owned all the common stock and a majority of the preferred stock in the Columbia Railway, Gas & Electric Company, all its gas, electric light, power, and other property rights and franchises, except certain rights and properties connected with the railway service. After such transfer, the Columbia Railway, Gas & Electric Company continued only a railway passenger service, until March 11, 1927, when it discontinued all railway operations.

A mandamus proceeding was instituted on July 19, 1927, in the Supreme Court of the state, by the state of South Carolina, to compel the Columbia Railway, Gas & Electric Company, the Broad River Power Company, and F. D. Campbell, president and general manager of both companies, to resume the railway service. Other parties interested in the furnishing of transportation in the city of Columbia were allowed to intervene in said proceeding. On July 28, 1927, the South Carolina Railroad Commission, which had been petitioned by the Columbia Railway, Gas & Electric Company to be allowed to discontinue its railway service, issued an order directing the railway company and the Broad River Power Company to restore the service abandoned on March 11, 1927, saying in its order that it appeared that the power company had undertaken to strip the railway company of its assets and had left it with its liabilities, and that the transaction was apparently one of bad faith, and subject to be set aside by law. On January 11, 1928, the state Supreme Court entered an order referring all issues of law and fact in the proceeding before it to a special referee, who fixed a hearing for January 25, 1928.

On January 24, 1928, the Columbia Railway, Gas & Electric Company filed its petition in the District Court for the Eastern District of South Carolina, praying that it be adjudicated a voluntary bankrupt. It also filed in the District Court its petition praying for a stay of the proceedings in the state court. The railway company was on that day duly adjudicated a bankrupt, and a temporary stay of the proceedings in the state court was granted, and the petitioners

therein required to show cause on January 28, 1928, why such stay should not continue in force pending the bankruptcy. Return was made to such order, and thereupon Broad River Power Company appeared and filed its petition, joining in the relief prayed for by the bankrupt. On January 25, 1928, the special referee appointed in the state court proceedings adjourned the reference thereto, subject to the further order of the referee. The District Court, by an order dated February 2, 1928, continued in force its former stay order of January 24, 1928.

On February 8, 1928, upon considering the return to the rule made on January 28, 1928, by the state of South Carolina, and others, and also upon the petition of the state of South Carolina to vacate and set aside the order of adjudication, the District Court awarded its rule returnable on the 1st day of March, 1928, before the judge in his chambers at Charleston, S. C., to show cause why the relief prayed for should not be granted. Thereafter, on the 13th of March, 1928, the District Court filed its written opinion, holding that the bankrupt corporation was not entitled to the benefits of the bankruptcy law, and accordingly, by order of March 13, 1928, vacated, revoked and set aside said adjudication. The Columbia Railway, Gas & Electric Company appealed from this action on March 16, 1928, which is the first case, No. 2737.

On April 2, 1928, the District Court (25 F.[2d] 329) also dissolved and revoked its stay orders of January 24 and February 2, 1928, from which action the appeal in the second case, No. 2738, was taken by the Columbia Railway, Gas & Electric Company and the Broad River Power Company. The assignments of error in the two cases will be considered separately. Those in No. 2737 are in substance as follows:

First. That the court erred in holding that the term "railroad corporation," contained in section 4a of the Bankruptcy Act (11 USCA § 22(a), included street railway corporations, particularly the bankrupt, and that said corporation was not entitled to be adjudicated a voluntary bankrupt; second, that the trial court erred in holding that the corporation was not entitled to be adjudicated a voluntary bankrupt inasmuch as the company had for more than a year theretofore actually discontinued the operation of its street car service; third, that the court erred in holding that the Columbia Railway, Gas & Electric Company partook more of the nature of a suburban or interurban street railway than of a simple street rail-

way in one town or city, and instead should have held that the corporation was a local street railway corporation serving a single community, and was as such entitled to be adjudicated a voluntary bankrupt; fourth, that the court erred in determining that at the time of the bankruptcy the street car railway was engaged in the operation of any of its lines outside of the city of Columbia other than those of the towns of Eau Claire, Arden, and Shandon, and a branch line to the Ridgewood Country Club.

These four assignments of error may be simplified by considering assignments 1 and 3 together, and assignments 2 and 4 together. The crucial question to be determined is whether the appellant, the Columbia Railway, Gas & Electric Company, is such a railroad corporation as brings it within the provisions of the Bankruptcy Act; that is to say, is the corporation one to which the benefits of the bankruptcy law is extended? If it is, the action of the District Court complained of, holding to the contrary and vacating and annulling the order of adjudication of the appellant as a bankrupt, should be reversed; and, if otherwise, such action —that is, holding the appellant not subject to the Bankruptcy Law, nor entitled to be adjudicated as such—should be affirmed.

The importance of this question, and the large class of those affected by its correct determination, can be better appreciated when the vast number of corporations operating street car lines and those interested therein, whether as owners, operatives, debtors, creditors, or the general public, are taken into account. The character of the business involved (that is, the operation of street car lines) and the law sought to be invoked in its behalf (that is, the national bankruptcy Act [11 USCA]) should be kept in view. There is a concessum that railroads proper cannot be adjudged bankrupts. This is apparent from the plain letter of the bankruptcy statute, and seems to be conceded otherwise because of the character of the corporations and the vastness and extent of their operations. But it is earnestly insisted that street car systems are not within the meaning of the Bankruptcy Act, and that because of this fact, and that they are as a rule less extensive in their operations, a different rule should prevail as to them.

[1-3] We are not inclined to acquiesce in either of these views, for the reason that in our judgment different considerations control. Both the railroad and the street car companies are public service corporations; that is to say, they owe their existence to the

sovereign power, they exercise in the construction and maintenance of their lines the governmental power of eminent domain, they are created, it is true, for the purpose of making money for the owners, but they furnish labor to those seeking employment, and primarily they are created and organized in the interest of the public and are charged with the duty of so maintaining and conducting the enterprise under the supervision and control of the legislative and executive authorities of the state and municipalities they serve, and are subject to their police control as well in the matter of conducting their properties as in the remuneration to be received by them therefor. They have conferred upon them special privileges in consideration of their providing facilities for communication and intercourse with the public. "These rights * * * are held by the grantee, the holder of the franchise, as the agent and trustee for the sovereign power, and are in no sense private, but continue after as well as before, the grant to be but a portion of the public interests." State of Washington v. Spokane St. Ry. Co., 19 Wash. 518, 53 P. 719, 41 L. R. A. 515, 67 Am. St. Rep. 739; and the corporations may not, by their own acts, disable themselves from performing the functions which were in consideration of the public grant. York, etc., R. R. Co. v. Winans, 17 How. 31, 15 L. Ed. 27; Thomas v. West Jersey Ry. Co., 101 U. S. 71, 25 L. Ed. 950; State of Washington v. Spokane Street Ry. Co., 19 Wash. 518, 53 P. 719, 41 L. R. A. 515, 67 Am. St. Rep. 739 (supra); Farwell Farmers' Warehouse Association v. Minneapolis, 55 Minn. 8, 56 N. W. 248.

It is true that the general designation of railroads contemplates an extended system sometimes covering an entire state, and not infrequently several states. The ordinary street car system or street railway none the less materially and vitally affects those within the legitimate sphere of its activities, less extensive though it may be, and indeed, most frequently, by reason of the close relation that the street car system has to the public, its control and regulation becomes a matter of more immediate concern to those directly affected thereby than if the service was more extended.

[4, 5] Public service corporations, especially railroads and street car lines, are rarely, if ever, disposed of in case of financial difficulties by sale upon the auction block, but almost invariably in foreclosure proceedings in equity, where their financial difficulties are adjusted, other securities issued, and the system continued, receivership certificates being issued pending the time necessary to effect such re-organization. In re Hudson River Power Transmission Co. (D. C.) 173 F. 934, affirmed (C. C. A.) 183 F. 701, 704, 33 L. R. A. (N. S.) 454. To attempt to wind them up with the summary methods contemplated in bankruptcy proceedings, selling the property and paying what is left, if anything, to the creditors, would nearly always result in great financial loss to the creditors and serious embarrassment and inconvenience to the public whom the line served, and largely in whose interests they were brought into being and constructed.

This very company is a striking illustration of what would result if such methods were inaugurated. The suburbs of the city of Columbia have been largely extended and built up, as have also the three or four towns and villages served, by this line chartered and operated by public authority, these communities now numbering some 60,000 people. The summary discontinuance of the service would result in great loss and hardship upon those who have acted upon faith in the continuance of the same, and would leave them without any substantial relief or effective plan of intercommunication. This unsatisfactory condition should not be augmented by enabling the corporation, after it has become involved in apparently hopeless financial embarrassment and trouble, to quietly declare itself a bankrupt and seek to avoid liability for its debts and obligations through the aid and authority of the bankruptcy court, which enforces and administers the bankruptcy law, not concurrently with, but exclusive of, other courts.

[6] These considerations doubtless influenced the Congress in not extending to railroad corporations the benefits and provisions of the Bankruptcy Law. The character and extent of relief afforded under that law should be taken into account in considering this question. The bankruptcy law is a part of the federal judicial system that looks to the prompt reducing the assets of those overtaken by financial disaster to money, winding up the estate and discharging the debtor. It is about as little suited to deal with the operating and winding up of public service corporations, having regard to the public's interest and convenience, and the rights of the public generally respecting such properties, as any method could well be, and we think it may be fairly concluded from that law and the method and conduct of disposing of the properties of such public service corporations that Congress never for a mo-

ment contemplated that the provisions of the Bankruptcy Law should be availed of by street railway systems. The history of the Bankruptcy Act itself will tend to show this to be true.

The present Bankruptcy Act of 1898 (30 Stat. p. 547, § 4) provided:

"a. Any person who owes debts except a corporation shall be entitled to the benefits of this act as a voluntary bankrupt.

"b. Any natural person, except a wage-earner or a person engaged chiefly in farming or the tillage of the soil, any unincorporated company, and any corporation engaged principally in manufacturing, trading, printing, publishing, or mercantile pursuits, owing debts to the amount of one thousand dollars or over, may be adjudged an involuntary bankrupt upon default or an impartial trial, and shall be subject to the provisions and entitled to the benefits of this act. Private bankers, but not national banks or banks incorporated under state or territorial laws may be adjudged involuntary bankrupts." By the amended act of 1903 (32 Stat. p. 797, § 3) the provisions as to involuntary bankruptcy were extended to include mining corporations; subsequently the amendment of June 25, 1910 (36 Stat. p. 839), was enacted, providing that any person except a municipal, railroad, insurance, or banking corporation might become a voluntary bankrupt, and the amended act also substituted for the words "and any corporation engaged principally in manufacturing, trading, printing, publishing, mining or mercantile pursuits," the words, "any moneyed business, or commercial corporation, except a municipal, railroad, insurance or banking corporation." It will thus be seen that not until the amendment of 1903 were corporations permitted to become voluntary bankrupts at all, and after that amendment, by the act of 1910 the present enlarged provision was made. Title 11, section 22, p. 250, USCA.

The meaning of the words "railroad corporation" has been frequently the subject of consideration by the state and federal courts, and while such decisions have not always been in harmony, and not infrequently have been at variance one with the other, depending largely upon the circumstances and character of the several cases, and how they arose, whether under the charters of such corporations and the effort to avoid liability arising thereunder, or in the enforcement of government rules and regulations respecting the same, still it may be said that the word "railroad" when considered in its generic

sense includes street railways; that is to say, that where there is nothing to indicate that the word is used in a restricted sense the same should be given its broadest signification.

Sight should never be lost of the fact that railroads and street car companies as a rule are distinguishable from other corporations in that they are public service corporations, engaged in the business of transporting passengers by rail. This is a matter peculiarly of public interest and importance, in that whole cities and communities are dependent upon the facilities afforded for the carrying on of their daily activities, and they are distinguishable, moreover, in that, being public service corporations by legislative authority and exercising the power of eminent domain, they may take private property for the use of their tracks and other purposes, or lay their tracks upon the public streets and highways, which latter they most frequently do. York, etc., R. R. Co. v. Winans, 17 How. 31, 15 L. Ed. 27 (supra); Massachusetts Loan & Trust Co. v. Hamilton (C. C. A.) 88 F. 588; Bloxam v. Consumers' Electric Light & Street Railway Co., 36 Fla. 519, 18 So. 444, 29 L. R. A. 507, 51 Am. St. Rep. 44; Gyger v. Philadelphia, 136 Pa. 96, 104, 20 A. 399; Shreveport Traction Co. v. Kansas City R. R., 119 La. 759, 773, 44 So. 457. See also Talcott v. Pine Grove, etc., Fed. Cas. No. 13,735, 1 Flip. 120; Savannah Ry. Co. v. Williams, 117 Ga. 414, 43 S. E. 751, 61 L. R. A. 249; Booth's Street Railways, § 1; Nellis on Street Railways, vol. 1, § 3.

The use of the language "railroad corporation" among those designated as municipal, insurance and banking corporations in no sense restricts the meaning of the words, but, on the contrary, shows that insurance and banking corporations, which are less of a general public character as well in the matter of their use and operation as the regulation thereof, than street car companies, are denied the right to avail themselves of the Bankruptcy Law.

If street car companies can be adjudicated as bankrupts under the laws of the United States, we can but be impressed with the paucity of judicial decisions on this subject. In the last quarter of a century there has perhaps been no class of property subject to greater vicissitudes and financial embarrassments than these large and valuable interests scattered throughout the entire country, and if the right of bankruptcy existed in behalf of those interests the same would have been constantly availed of. Our attention

has been directed to but one case so holding, that of In re Grafton Gas & Electric Light Co., 253 F. 668, a District Court decision from the Northern District of West Virginia. The case of Omaha & C. B. Street Ry. Co. v. Interstate Commerce Commission, 230 U. S. 324, 33 S. Ct. 890, 57 L. Ed. 1501, 46 L. R. A. (N. S.) 385, gives some support also to the contention made by appellant. A careful review, however, of these cases will at least demonstrate that they do not sustain the contention that a street car company such as the one here may avail itself of the benefits of the bankruptcy law. The last-named case arose under the Interstate Commerce Act (49 USCA §§ 1–22, 25–27; Comp. St. § 8563 et seq.), and neither under the facts of the case nor the provisions of the act materially affects the question at issue in this case, of the right to put a street railway corporation into bankruptcy. While the first-named decision is strictly a case of a street car line, it does not throw great light on the question in this case because of the comparative shortness of the line in that case and the small community served by it.

We can but feel that under the plain provisions of the Bankruptcy Act, the same has no application to street car lines of the character under consideration here, and that, on the contrary, they are expressly excepted therefrom; that from every consideration, having regard to the public character of the street car system, the service it is obligated to render the public, and the burdens it assumed in thus becoming a public service corporation amenable especially to the laws of the sovereignty creating it, it cannot be adjudicated a bankrupt. Many authorities might be cited to support this general conclusion, but only a few need be referred to in detail. The case of Central National Bank of Worcester v. Worcester Horse Railroad Co., 95 Mass. (13 Allen) 105, 106, will be found to be of special interest, in which the Supreme Judicial Court of Massachusetts said as follows:

"In our opinion it is clear that they [horse or street railroads] must fall within the exception of 'railroad corporations,' and not within the general class of corporations, out of which railroad corporations are excepted. The chief characteristics of a railroad corporation, under the laws of this state, are that it is created mainly for the public benefit, and only incidentally for its own profit; intrusted with the public right of eminent domain for the purpose of taking land, at least outside of the common highways, and of laying iron rails and preparing the soil to support them; authorized and directed to carry passengers for fares in its own cars over its own rails; punishable for transgression of the rules prescribed for the public safety and convenience, and protected from interference with its rights, by indictment in behalf of the public; obliged to transport the cars and passengers of other similar corporations on terms fixed by commissioners appointed by this court; having a franchise which cannot be alienated, absolutely or in mortgage, without permission of the Legislature; required to make annual returns showing its pecuniary condition and the mode in which it has discharged its public duties; and bound to surrender its charter and property to the public upon being paid a sum sufficient to reimburse its expenditures, and a reasonable interest or profit. A 'horse railroad company,' or, as it is more frequently and more appropriately called in the recent statutes, a 'street railway corporation,' has all these attributes; and is not the less a 'railroad corporation,' less public in its character, or more fit to have its franchise and property transferred to assignees under proceedings in insolvency, because (as its very names imply) it more generally uses horses, instead of steam power, to draw its cars; and lays its rails over land already devoted to public use for a street or highway, and is therefore made by statute peculiarly subject in the location and use of its tracks to the regulations of the municipal authorities." Central Nat. Bank v. Worcester Horse R. R., 95 Mass. (13 Allen) 105, 106.

In the case of New England Eng. Co. v. Oakwood St. Ry. Co., 75 F. 162, a decision of the United States Circuit Court, Sixth Circuit, arising under the mechanics lien law of the state of Ohio, consideration was given to the question whether the word "railroad" included street railways. The learned judge, now Mr. Chief Justice Taft, held that it did, saying as follows:

"The contention is that the term 'railroad,' as used in this section, refers to commercial or traffic railroads, as distinguished from 'street railways.' It is said that in the statutes of Ohio the usus loquendi requires that the term 'railroad,' when used without qualification, should be held to mean commercial or traffic railroads, and not those which are used for passenger purposes upon the streets of cities and villages. * * * We are to determine from the association in which the term occurs whether street railroads would naturally be included within it. I am very clear that the doctrine, 'Noscitur a sociis,' establishes that the word 'railroad,' in this

connection, includes 'street railroads.' * * * It is very clear to me that the narrowest construction of the statute in question would not exclude street-railway companies from its operation." New England Eng. Co. v. Oakwood St. Ry. Co. (C. C.) 75 F. 162, 164, 165, 166.

As heretofore stated, the Bankruptcy Act excludes from its benefits municipal, insurance, and banking corporations, the last-named two of which are of a less public character than street car companies. In Minneapolis Street Railway Co. v. City of Minneapolis (C. C.) 155 F. 989, 995, it was held that a street railway corporation was included within the term railways and brought within the statute regulating the formation of corporations. Judge Lochren, long the able and distinguished judge of the District Court for the District of Minnesota, said:

"As I said before, a street railway is a corporation of that character. It is a quasi public corporation. Its duties are to render public service. Now, it is true that street railways, by that name, are not mentioned in title 1. Railways are mentioned as the very first kind of business that is named in the title. It also includes 'any other public improvement,' any association formed for the purpose of carrying on the work of public improvement; but it seems to me that the title of 'railways,' without more, covers the case of street railways. In other words, that 'railways' is a generic title which covers all kinds of railways. A railway is a way which is made for the movement of cars, or something of that character, upon tracks that are laid down either on the street or somewhere else. They are not propelled as ordinary vehicles, such as wagons and carriages, are on the highways generally, but require for their operation that tracks be expressly formed to be moved upon, and a street railway is of that character. Therefore, it is distinctly a railway. Now, there is nothing in that statute which would indicate that street railways were not included in it. They are railways. They perform public functions. It is proper to invest them with the power to exercise the right and power of eminent domain. There is no reason in the world why

they should be omitted." Minneapolis St. Ry. Co. v. City of Minneapolis (C. C.) 155 F. 989, at page 995.

[7] Upon considering assignment of error number 3 to the court's conclusion that the Columbia Railway, Gas & Electric Company in its nature partook more of a suburban or interurban street railway than of the simple street railway in one town or city, we are inclined to concur with the court in that ruling, and we are also in accord with its views under assignment No. 1 as to the exclusion of the street car companies generally from the provisions of the bankruptcy law.

[8] Concerning assignment No. 2, we think the court's ruling to the effect that the street railway company, having discontinued service upon its car lines at the time of the inauguration of the bankruptcy proceedings, was not thereby entitled to be put into bankruptcy, is correct, and the assignment therefore is without merit.

Regarding assignment No. 4, the views expressed by us in disposing of assignments 1 and 3 in effect answer this assignment, and show the same to be without merit.

The decision of the learned judge of the District Court in this appeal, No. 2737, will be found reported in 24 F. (2d) 828, to which reference is made as containing an able and comprehensive discussion of the law applicable to the subject under consideration.

[9] The appeal in No. 2738 is brought by the Columbia Railway, Gas & Electric Company and the Broad River Power Company from the order of the court vacating and annulling its order theretofore entered, staying the proceedings in the state court pending bankruptcy. The assignments of error, from our viewpoint, are without merit, since under our ruling approving the court's action in setting aside the order of adjudication, denying the bankruptcy and dismissing the petition praying therefor, it follows that the right to stay proceedings in the state court no longer existed, and that the same became ineffective upon the dismissal of the bankruptcy proceeding.

The action of the District Court will be affirmed in both appeals, at the expense of the appellants therein.

Affirmed.